974 F.2d 1339
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
TERMINIX INTERNATIONAL COMPANY LIMITED PARTNERSHIP, Plaintiff-Appellant
v.
SAFETY MUTUAL CASUALTY COMPANY, Defendant-Appellee
 No. 91-6329.
 United States Court of Appeals, Sixth Circuit.
 Aug. 20, 1992.
 
 Before RYAN, BOGGS and BATCHELDER, Circuit Judges.
 PER CURIAM.
 
 
 1
 This case involves the interpretation of a liability insurance policy issued by defendant-appellee Safety Mutual Casualty Company ("Safety Mutual") to the insured, plaintiff-appellant Terminix International Company Limited Partnership ("Terminix"). The district court held that the policy did not cover the loss claimed by Terminix. We agree, and will affirm.
 
 I.
 
 2
 In May, 1985, one of Terminix's drivers was involved in an automobile accident in which Lee Yoo, then an unborn child, was injured. Hee Ju Yoo, as guardian ad litem and next friend of Lee Yoo, filed suit against Terminix, whereupon Terminix joined Lee Yoo's mother, Haeson Lee Yoo, as a third-party defendant. In 1989, after the trial had begun, the suit was settled when Terminix agreed to pay $1,400,000 to the plaintiff in that suit.
 
 
 3
 During the calendar year of 1985, Terminix had the following liability insurance policies: (1) primary coverage of $500,000 with Home Indemnity Company (not a party to this suit); (2) an umbrella policy with Integrity Insurance Company ("Integrity") (not a party to this suit) for additional sums up to $5,000,000; and (3) an excess umbrella policy with Safety Mutual for sums over Integrity's coverage up to an additional $5,000,000. Home Indemnity paid its $500,000 as part of the settlement. Integrity, however, had become insolvent in 1987 and thus did not pay the additional $900,000.
 
 
 4
 Terminix brought the instant action against Safety Mutual in 1989, requesting a judgment declaring that under the policy Safety Mutual was required to pay the additional $900,000. After discovery, the parties filed cross-motions for summary judgment. In a six-page opinion, the district court ruled in favor of Safety Mutual, holding that the policy did not expressly cover the loss in question and that there was no ambiguity in the terms of the policy. Terminix filed a timely notice of appeal.
 
 II.
 
 5
 We review de novo the grant of summary judgment. Leila Hosp. & Health Ctr. v. Xonics Med. Sys., Inc., 948 F.2d 271, 274 (6th Cir.1991); EEOC v. University of Detroit, 904 F.2d 331 (6th Cir.1990). In addition, although this is a diversity case involving the application of state law, this Court reviews the legal conclusions of the district court de novo, with no deference to the local district court judge. Salve Regina College v. Russell, 111 S.Ct. 1217, 1221 (1991); J.C. Wyckoff & Associates, Inc. v. Standard Fire Ins. Co., 936 F.2d 1474, 1483 (6th Cir.1991). The parties agree that the questions before the Court are legal, not factual, in nature.
 
 III.
 
 6
 On appeal, Terminix asserts two primary arguments. First, Terminix contends that the policy unambiguously provides for coverage of the loss. Second and alternatively, Terminix contends that the policy is ambiguous, and since all ambiguities must be construed against the insurer, the court must construe the policy's terms in favor of Terminix.
 
 
 7
 The starting point for our discussion must be the language of the policy. The parties agree that only three portions of the policy are relevant to the present case. The first is the preamble of the policy, which states in pertinent part,
 
 
 8
 The Company agrees, subject to the limitations, terms, and conditions hereinafter mentioned, to indemnify the Insured for all sums which the Insured shall be obligated to pay by reason of the liability imposed upon the Insured by law, or assumed under contract or agreement by the Named Insured for damages, direct or consequential and expenses on account of:
 
 
 9
 (a) Personal injuries, including death at any time resulting therefrom.
 
 
 10
 The second relevant section of the policy is paragraph 5 of the Conditions section of policy which provides,
 
 
 11
 5. Other Insurance: If other valid and collectible insurance with any other insurer is available to the Insured covering a loss also covered by this Policy, other than insurance that is in excess of the insurance afforded by this Policy, the Insurance afforded by this Policy shall be in excess of and shall not contribute with such other insurance.
 
 
 12
 The third relevant provision is Declarations Item 6, the "Limit of Liability" portion of the policy, which provides,
 
 
 13
 It is expressly agreed that liability shall attach to the Company only after the Underlying Umbrella Insurers have paid or have been held liable to pay the full amount of their respective ultimate net loss liability as follows:
 
 
 14
 (a) $5,000,000. ultimate net loss in respect of each occurrence, but
 
 
 15
 (b) $5,000,000. in the aggregate for each annual period during the currency of this Policy, separately in respect of Products Liability and separately in respect of Personal Injury (fatal or non-fatal) by Occupational Disease by any employees of the Insured
 
 
 16
 and the Company shall then be liable to pay only the excess thereof up to a further
 
 
 17
 (c) $5,000,000. ultimate net loss in respect of each occurrence--subject to a limit of $ N/A
 
 
 18
 (d) $5,000,000. in the aggregate for each annual period during the currency of this Policy, separately in respect of Products Liability and separately in respect of Personal Injury (fatal or non-fatal) by Occupational Disease by any employees of the Insured.
 
 
 19
 Terminix's first argument focuses on the first two of the provisions, the preamble and paragraph 5. It contends that when read together these provisions expressly indicate that the policy covers the loss in question. Terminix correctly argues that "collectible" insurance does not include insurance from an insolvent insurer. See, e.g., Harkavy v. Phoenix Ins. Co., 417 S.W.2d 542, 544 (Tenn.1967). From this premise, Terminix asserts that because the preamble states that the policy insures "for all sums", and since no other insurance covers the loss, the policy must cover the loss. This argument misses the mark, in large part because Terminix's argument does not consider Declarations Item 6.
 
 
 20
 Under Tennessee law,[1] "It is the Court's duty to enforce contracts according to their plain terms. ... [T]he entire contract should be considered in determining the meaning of any or all of its parts." Cocke County Bd. of Highway Comm'rs v. Newport Util. Bd., 690 S.W.2d 231, 237 (Tenn.1985); see Aetna Cas. & Sur. Co. v. Woods, 565 S.W.2d 861, 864 (Tenn.1978). Furthermore, "The contract should not be given a forced, unnatural or unreasonable construction which would extend or restrict the policy beyond what is fairly within its terms, or which would lead to an absurd conclusion or render the policy nonsensical and ineffective." Dixon v. Gunter, 636 S.W.2d 437, 441 (Tenn.App.1982). In the area of insurance policies the following rules also apply.
 
 
 21
 Insurance contracts like other contracts should be construed so as to give effect to the intention and express language of the parties. In construing and applying insurance policies, the apparent object and intent of the parties must be kept in mind. Language in a contract which happens to be technical or complex to the layman, does not render it ambiguous, and where there is no ambiguity it is the duty of the court to apply to the words used their usual, natural and ordinary meaning. The court cannot, under the guise of construction, make a new and different contract for the parties.
 
 
 22
 Blaylock & Brown Constr., Inc. v. AIU Ins. Co., 796 S.W.2d 146, 149 (Tenn.App.1990) (citations omitted); see also Paul v. Insurance Co. of North America, 675 S.W.2d 481, 484 (Tenn.App.1984) (there must be two reasonable constructions of contract language before the court will find an ambiguity).
 
 
 23
 Applying these rules of interpretation, we conclude that the Safety Mutual policy does not expressly cover the loss in question, and that there is no ambiguity in the policy. Rather, we conclude that the policy unambiguously does not cover the loss here. Declarations Item 6 clearly provides that the Safety Mutual policy provides coverage in excess of that provided by the Integrity umbrella policy. The fact that the Safety Mutual policy also contains a provision concerning collectible insurance does not alter this conclusion, nor does it create an ambiguity. First, the collectible insurance provision, paragraph 5, specifically refers to other collectible insurance "covering a loss also covered by this policy." The Integrity policy, however, covered losses separate from those covered by the Safety Mutual policy. Specifically, the Safety Mutual policy only covered losses in excess of the $5,000,000 limit on the Indemnity policy. Second, even if the loss were "also covered", the determination of whether insurance is valid and collectible is made at the time of the accident, Harkavy, 417 S.W.2d at 544, and since the Integrity insurance was collectible at the time of the accident at issue in this case, it constituted valid and collectible insurance. As a result, the Safety Mutual policy still would be in excess of the Integrity policy limit of $5,000,000. Therefore, the terms of the policy clearly and unambiguously exclude coverage for a loss such as the one in the present case.
 
 
 24
 The authority cited by Terminix to support its argument that the policy is ambiguous is unpersuasive. Terminix relies heavily on Northmeadow Tennis Club, Inc. v. Northeastern Fire Ins. Co., 26 Mass.App.Ct. 329, 526 N.E.2d 1333 (1988), a case in which the Appeals Court of Massachusetts interpreted an insurance contract that contained provisions very similar to the ones in the Safety Mutual policy at issue here. The court held,
 
 
 25
 The phrase "held liable to pay," if not regarded as surplusage (there is no reason to do so), posits an eventuality in which the insured, and hence the primary insurer, are liable but the insurer for some reason has not paid. The case of insolvency would be such an eventuality. At least the policy is susceptible of that interpretation.
 
 
 26
 Id. at 332-33, 526 N.E.2d 1335-36 (citation omitted).
 
 
 27
 We decline to follow Northmeadow in part for the reasons that the Supreme Judicial Court of Massachusetts relied upon in very recently rejecting its holding. In Vickodil v. Lexington Ins. Co., 412 Mass. 132, 587 N.E.2d 777 (1992), the terms of the insurance policy at issue were similar to those in the policies in Northmeadow and in the present case. The policies at issue in these three cases contained language about the excess insurer's liability not attaching "unless ... the Insured's Underlying Insurance has paid or been held liable to pay" the total underlying policy limits. In each of the cases, the plaintiff argued in the trial court that the excess insurer should drop down to cover the loss that the insolvent underlying insurer did not pay. See id. at 137, 587 N.E.2d at 780. The court in Vickodil, however, rejected the argument that the excess insurer should drop down.
 
 
 28
 [W]e accept the idea that the provision in Lexington's policy that Lexington's liability "shall not attach unless and until the Insured or the Insured's Underlying Insurance has paid or has been held liable to pay the total applicable underlying limits" says that Lexington's liability attached after the insured (Amram and its employee) were held liable to pay the plaintiffs. We also accept the notion that the policy language "posits an eventuality" in which a first-level excess insurer, here Northeastern, is liable but for some reason, including insolvency, has not paid. In those circumstances, Lexington is liable under its policy, a matter which Lexington acknowledged when it paid the plaintiffs $473,394.10. It does not follow, however, that Lexington's coverage drops down to be excess of an amount less than $1,000,000. The provision on which the plaintiffs rely speaks only to the insurer's liability to pay excess. It says nothing about the excess coverage lower limit dropping down below the specified $1,000,000. Therefore, there is no basis to hold that it drops down. We hold that it does not drop down. We do not follow the Appeals Court's contrary holding in Northmeadow Tennis Club, Inc.
 
 
 29
 Id. at 137-38, 587 N.E.2d at 780 (emphasis in original).
 
 
 30
 Furthermore, other cases that interpret policies worded similarly to the one at issue in the present case do not favor Terminix's position. For example, in Denny's Inc. v. Chicago Ins. Co., 286 Cal.Rptr. 507 (Cal.App.1991), the court distinguished cases that interpreted policies which contained "amount recoverable" language in them. Likewise, in the present case, the policy did not provide coverage in excess of amounts recoverable; it provided coverage in excess of other valid and collectible insurance, which the Integrity insurance was. Specifically, the Safety Mutual coverage attached only after the underlying umbrella insurers had paid or been held liable to pay losses of $5,000,000, and then only in excess thereof up to an additional $5,000,000. The court in Denny's also rejected the reasoning and result in Northmeadow.
 
 
 31
 The language of the policies limiting the liability of Chicago and Comstock when read as a whole, and without isolating parts thereof, clearly and unambiguously states that those excess insurers are liable only when the underlying insurer has paid the policy limit or has been held liable to pay the policy limit (whether or not the underlying insurer has actually paid) and that their liability is limited to amounts in excess of the underlying policy limit (whether or not actually paid) up to the limits of the Chicago and Comstock policies.
 
 
 32
 286 Cal.Rptr. at 512. Similar holdings are found in decisions of the Seventh Circuit, Hudson Ins. Co. v. Gelman Sciences, Inc., 921 F.2d 92, 94-95 (7th Cir.1990), and New York's Supreme Court, American Re-Insurance Co. v. SGB Universal Builders Supply Inc., 532 N.Y.S.2d 712, 716 (Sup.Ct.1988). All of these cases provide additional support for our decision.
 
 IV.
 
 33
 Having concluded that the Safety Mutual policy clearly and unambiguously does not cover the loss experienced by Terminix, we AFFIRM the district court's order granting summary judgment to Safety Mutual.
 
 
 
 [1]
 The parties agree that this diversity matter is governed by the law of Tennessee. Erie R. Co. v. Tompkins, 304 U.S. 64 (1938)