**REGENTS OF THE UNIVERSITY OF MICHIGAN, Plaintiff–Appellee,**

v.

**EMPLOYEES OF AGENCY RENT–A–CAR HOSPITAL ASSOCIATION and Agency Rent–A–Car Employees Health Care Plan, Defendants–Appellants.**

No. 96–1329.

United States Court of Appeals, Sixth Circuit.

Argued April 24, 1997.

Decided Aug. 12, 1997.

Diana Raimi (argued and on brief), Stein, Moran, Raimi & Goethal, Ann Arbor, MI, L. Stewart Hastings, Hastings & Kerka, Cleveland, OH, for Plaintiff–Appellee.

Kerin Lyn Kaminski, Karen Giffen (argued and briefed), Cavitch, Familo, Durkin &

Frutkin, Cleveland, OH, for Defendants–Appellants.

Before: KEITH, BATCHELDER, and DAUGHTREY, Circuit Judges.

## OPINION

BATCHELDER, Circuit Judge.

This action involves the interpretation of a coordination of benefits clause ("COB") contained in an Employee Retirement Income Security Act ("ERISA") health care plan. Defendants, Agency Rent–A–Car Employees Health Care Plan and Employees of Agency Rent–A–Car Hospital Association (hereinafter referred to collectively as "Agency" or defendants) assert that the COB clause in the Agency Plan permits the Plan to refuse to pay valid health care claims in light of the insolvency of the primary ERISA plan. The district court granted plaintiff's motion for summary judgment finding that defendants' coverage "dropped down," requiring defendants to pay the amount due for the medical care above and beyond that amount paid by the insolvent primary ERISA insurer. For the reasons that follow, we affirm the order of the district court.

Summary judgment is appropriate where "there is no genuine issue as to any material fact and [ ] the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). We review a district court's grant of summary judgment de novo. *Pinney Dock & Transp. Corp. v. Penn Cent. Corp.*, 838 F.2d 1445, 1472 (6th Cir.1988).

The facts of this case are straightforward. Jeffrey and Karen Westra had separate policies of medical insurance through their respective employers. Mr. Westra's insurance was through Agency Rent–A–Car Health Care Plan. Mrs. Westra was insured through a 65 Security Plan. Both policies are governed by ERISA. In 1991 and 1992, the Westra family incurred substantial medical bills related to the care of their infant son who was treated at the University of Michi-

gan's Medical Center. After the medical care was provided, each ERISA plan, citing the COB clause in its respective contract, claimed that the other company's coverage was primary and that its own coverage was excess. Accordingly, each declined payment of the claims, and the Westras eventually sued both companies.

On March 11, 1993, the district court held that the 65 Security Plan was the primary insurer,[1] and that the Agency Plan coverage was excess. Approximately three months after this ruling, a number of creditors of the now-insolvent 65 Security Plan filed claims against the Plan in federal district court in New York. Jeffrey and Karen Westra assigned all of their rights against the Plan to the University of Michigan Medical Center, which participated in the district court proceedings as a creditor. Agency was not a creditor of the Plan and did not participate in those proceedings. The district court ordered the 65 Security Plan to pay 10% of the medical expenses owed to the Hospital. The 65 Security Plan has paid some of the 10% owed.

The Regents of the University of Michigan brought this action against Agency pursuant to ERISA, 29 U.S.C. §§ 1132(a)(1) and (3) and 1132(d), to obtain payment of the remainder of the bills owed. Agency defended, relying upon this language of its COB clause:

DO BENEFITS UNDER OTHER PLANS AFFECT THESE BENEFITS? Yes. Some individuals have medical or dental expense coverage in addition to coverage under this Plan. When this happens, the benefits from the "other plans" will be deemed to provide primary coverage. This may require a reduction in benefits under this Plan, so that the combined benefits will not be more than the expenses recognized under these plans.

An "other plan" means any plan of medical or dental expense coverage provided by:
1. Group insurance or any other arrangement of medical/dental coverage available

---

1. The 65 Security Plan's COB clause stated, "[i]f your dependent children are covered under two plans, their 'primary' plan is the coverage provided by the father's plan." The district court held the 65 Security Plan's COB clause invalid because it violated Title VII and was discriminatory. The court then held that the 65 Security Plan, having no COB clause, was primary. That ruling is not at issue here.

to a member or enrolled eligible dependents.

According to Agency, this language means that Agency's coverage is excess in nature, and is not triggered until the primary insurer has paid claims in the amount of the policy limits. Because the 65 Security Plan has never paid the full extent of its coverage, Agency has no obligation to pay at all.

The district court, in a published opinion, granted plaintiff's motion for summary judgment, finding Agency liable for all medical bills not covered by the 65 Security Plan. *Regents of University of Michigan v. Employees of Agency Rent–A–Car Hosp. Ass'n,* 898 F.Supp. 492 (E.D.Mich.1995). The district court held that Agency's COB was not ambiguous, and that the

> plan language provides that the "benefits" from the "other plan" will reduce the benefits to be provided under Agency's plan.... [T]he language refers to benefits "received" from the "other plan" because the language specifically directs itself to the concern that benefits will not exceed expenses. Furthermore, the language of Agency's plan specifically refers to coverage "available."

*Id.* at 493–94. In essence, the district court held that because the 65 Security Plan is insolvent, there are no funds "available" from the "other plan," and therefore Agency is liable for payment of the medical bills remaining due.

Agency argues that the term "available" means only that the insured had coverage under another insurance plan; the term does not require that other plan be solvent or able to pay claims. Therefore, Agency says, since the Westras had coverage under the 65 Security Plan, the Westras had other coverage available. Since that coverage was available, it was primary, and the Agency Plan's coverage is not triggered until the primary insurance has paid claims in the amount of its policy limits. That the primary insurer can never make payment in that amount because of insolvency is irrelevant. Furthermore, Agency says, even if "available" were read to mean that the primary insurer must have the funds actually to pay the policy limits, "availability" must be determined as of the time

the medical bills were incurred. In this case, since the primary insurer was not declared insolvent until after the bills were incurred, the coverage was available at that time; the primary insurer has not paid out the full extent of its coverage, and Agency's liability has not been triggered.

■ Both parties agree that ERISA does not address COB clause interpretations. In those limited situations where ERISA fails to address a particular issue, federal courts are expected to develop a body of federal common law to fill the interstitial gap in the statutory mandate. *Auto Owners Ins. Co. v. Thorn Apple Valley, Inc.,* 31 F.3d 371, 374 (6th Cir.1994) (citing *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 56, 107 S.Ct. 1549, 1557–58, 95 L.Ed.2d 39 (1987)). In developing such federal common law, the federal court may take direction from the law of the state in which it sits, or it may generally review law on the issue and adopt a federal rule. In any case, the rule used must be the one "that best comports with the interests served by ERISA's regulatory scheme." *PM Group Life Ins. Co. v. Western Growers Assur. Trust,* 953 F.2d 543, 546 (9th Cir. 1992). The district court correctly noted that the question of what rule to use in interpreting COB clauses is an issue of first impression in this circuit, and there appear to be no cases exactly on point.

■ The state law to which the federal court may look in this case is that of Michigan, which follows general contractual rules when interpreting insurance contracts.

> Under Michigan law, insurance policies are to be construed in a manner consistent with the ordinary and popular sense of the language used therein. A technical construction of a policy's language which would defeat a reasonable expectation of coverage is not favored.... Accordingly, an insurer has a duty to express clearly the limitations in its policy; any ambiguity will be construed liberally in favor of the insured and strictly against the insurer.

*Ford Motor Credit Co. v. Aetna,* 717 F.2d 959, 961 (6th Cir.1983) (internal citations omitted). The federal common law as expressed by other circuits requires that the

terms of an ERISA plan be interpreted in an ordinary and popular sense, and that any ambiguities in the language of the plan be construed strictly against the drafter of the plan. *See Phillips v. Lincoln Nat'l Life Ins. Co.,* 978 F.2d 302, 307–308 (7th Cir.1992).

■ Thus, the federal common law, to the extent that it has been developed on this issue, and the Michigan law are essentially the same, and application of either leads to the same result. Construing the language of the COB clause in Agency's plan according to the ordinary sense of its language and resolving ambiguities against the drafter, we think it is inescapable that Agency's reading of the clause is wrong. Certainly our reading the clause as Agency does would frustrate the purpose of ERISA, which is to protect "the interests of participants in employee benefit plans and their beneficiaries." 29 U.S.C. 1001(b); *see also Auto Owners,* 31 F.3d at 375. As Judge Kozinski aptly observed in *PM Group Life Insurance,* 953 F.2d at 544, "The next worst thing to having no insurance at all is having two insurance companies cover the same claim." We would note only that if Agency's reading of its COB clause were adopted by this court, having two insurance companies cover the same claim might well be worse than having none, since Agency's plan participants would be at serious risk that if they also had coverage under another plan, their medical bills would be paid by neither plan, and the participants would have the pleasure of incurring litigation expenses and legal fees as well. Accordingly, we conclude that under the Agency COB at issue here, once the Security 65 Plan became insolvent, there was no other insurance coverage "available" beyond the amount that the Security 65 Plan was ordered by the district court in New York to pay to the Medical Center.

■ Agency's fall-back position—that even if other insurance is "available" only if the other insurer has the ability to pay the claims, the determination of availability must be made at the time the medical care is provided—is also untenable. Agency relies on *Terminix v. Safety Mutual Casualty Co.,* No. 91–6329, 1992 WL 203789 (6th Cir. August 20, 1992), an unpublished decision of this court, to support this proposition. That case,

however, did not involve ERISA plans, and was decided as a matter of Tennessee law. Agency cites no authority, and we have found none, that incorporates into the federal common law a requirement that, for purposes of a COB clause, the availability of other insurance be determined at the time that the medical care was provided.

■ The defendants make two other arguments which deserve some mention. The first argument is that Agency's plan should be treated as an umbrella policy. Defendants again cite *Terminix* in support of this proposition. Rather than supporting defendants' argument, however, *Terminix* clearly depicts the difference between a true "umbrella" policy and the Agency plan. In a true umbrella policy, a prearranged dollar figure is written into the insurance contract and the insurance company is liable only for amounts in excess of that prearranged dollar figure. In *Terminix,* the insurance policy in question clearly stated that its coverage would not be triggered unless a prearranged dollar amount of liability was met. *Id.* at **1–3. The court found that the prearranged dollar figure was not reached, and therefore the language of the contract unambiguously did not cover the loss. *Id.; see also Morbark Indus., Inc. v. Western Employers Ins. Co.,* 170 Mich.App. 603, 429 N.W.2d 213 (1988) (true umbrella policy does not drop down upon insolvency of primary insurer). There is no prearranged dollar figure in Agency's COB clause. Contrary to defendants' protestations, Agency's plan clearly is not an umbrella policy.

■ Agency relies upon Michigan law for its second argument. COB clauses in Michigan, and elsewhere, have been divided into three categories:

1. A pro-rata clause, which purports to limit the insurer's liability to a proportionate percentage of all insurance covering the event;

2. An escape or no-liability clause, which provides that there shall be no liability if the risk is covered by other insurance; and

3. An excess clause, which limits the insurer's liability to the amount of loss in

excess of the coverage provided by the other insurance.

*NALC Health Benefit Plan v. Lunsford,* 879 F.Supp. 760, 765 (E.D.Mich.1995). Agency asks this court to treat its excess clause as an escape clause, absolving it from all liability. But this result is precluded by the plain language of the clause which clearly indicates that an excess clause, not an escape clause was intended.

We think one final observation is in order here. The bottom line of Agency's position is this: although the Westra family had health insurance through not one but two plans, and the Medical Center provided medical services with that understanding; and although the sole reason that the medical bills were not paid is that both plans refused to pay the claims for a sustained period of time, during which one of the plans became insolvent and unable to pay; nevertheless, the burden of these health care expenses ought to be borne either by the family or the Medical Center rather than by the Agency Plan, which was paid to insure this risk. It is difficult to imagine a result better calculated to frustrate ERISA's underlying purpose, which is to protect "the interests of participants in employee benefit plans and their beneficiaries." 29 U.S.C. § 1001(b).

The order of the district court is **AFFIRMED**.