KMART CORPORATION, Plaintiff,

v.

FIREMAN'S FUND INSURANCE COMPANY, Defendant.

No. Civ.A. 99–40144.

United States District Court, E.D. Michigan, Southern Division.

March 29, 2000.

768

Timothy D. Wittlinger, Clark Hill, Detroit, MI, for plaintiff.

John Hayes, Lacey & Jones, Birmingham, MI, for defendant.

### MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

Before the Court is Plaintiff Kmart Corporation's Motion for Summary Judgment filed August 17, 1999. Plaintiff moves for summary judgment on all claims for relief in its Complaint: Count I (breach of insurance contract), Count II (declaratory relief), and Count III (violation of Michigan's Insurance Code, M.C.L. § 500.2006). For the reasons set forth below, this Court grants Plaintiff's motion.

### Factual Background

The following facts appear to be undisputed. Plaintiff Kmart Corporation is engaged in the business of mass merchandise retail, which includes purchasing goods and products for resale through its chain of retail stores. In pursuit of this business, Plaintiff assembles or installs products in its stores in order to demonstrate or display the products.

In July 1996, Plaintiff agreed to purchase many wrought iron patio furniture sets from Compex. The patio furniture sets in question consist of five pieces (a

table and four spring rocker chairs) and were sold under the trade name "Gables." The Order Contract included a provision whereby Compex agreed to "reimburse, indemnify, hold harmless and defend [Plaintiff] ... against all damage, loss, expense, claim, [and] liability ... including, without limitation, claims of ... bodily injury, or property or other damage arising out of any use, possession, consumption or sale" of the patio furniture. (Pl.'s Ex. B, ¶ 3.) Compex was also required to obtain adequate insurance to cover its liability under the Order Contract and provide copies of certificates of insurance to Plaintiff. (*Id.*)

In compliance with this obligation, Compex obtained a comprehensive general liability policy of insurance from Defendant Fireman's Fund Insurance Co. (*See* Pl.'s Ex. C.) Compex also obtained from Defendant a blanket vendor's endorsement naming Plaintiff as an additional insured. (Pl.'s Ex. D.) Compex provided Plaintiff a Certificate of Liability Insurance showing that Plaintiff was an additional insured under the policy. (Pl.'s Ex. E.)

In July 1996, Plaintiff ordered approximately 2,300 patio furniture sets from Compex and distributed them to some of Plaintiff's stores for resale. Plaintiff's employees or independent subcontractors assembled one patio furniture set at each store for demonstration and display on the sales floor. The remaining sets of furniture were stored nearby for sale to customers. (Plaintiff states that the assembled set was also available for resale to Plaintiff's customers.) In 1997 Plaintiff sold 33,985 patio furniture sets, and in 1998 it sold 36,491 sets. (Def.'s Ex. 2.)

Between February 1997 and August 1998, Plaintiff received notice of at least 53 claims or lawsuits filed by persons alleging to have been injured by the Compex-manufactured patio furniture on which they had been sitting on Plaintiff's sales floor. According to Defendant, since April 1997, Plaintiff received reports of 84 incidents in which a Gables spring rocker chair collapsed and that all but one of these incidents occurred in one of Plaintiff's stores while a customer was sitting in a display model. (Def.'s Mot. at 2; *see* Def.'s Ex. 3.) Apparently only approximately 60 of these reported incidents have given rise to claims against Plaintiff.

In a letter to the United States Consumer Products Safety Commission sent in July 1997, Plaintiff attributed the nature of the potential defect to improper assembly. (Def.'s Ex. 4 at 2.) According to Plaintiff,

It presently appears that if the person who assembles the chair does not follow the assembly instructions precisely, the chair may collapse. The person who assembles the chair must be certain that two rear bolts are inserted into the gaps at the end of the spring.... If these instructions are not followed, the chair seat may eventually work its way off of the chair base, resulting in the collapse of the chair.

(*Id.*) Plaintiff's "Notice of Safety Recall" warned customers that improper assembly can result in the chair collapsing. (Def.'s Ex. 5.)

Plaintiff tendered the defense of the injury claims to Defendant, relying in part on the following vendor's endorsement provision:

The insurance afforded the vendor does not apply to ... [d]emonstration, installation, servicing or repair operations, *except such operations performed at the vendor's premises in connection with the sale of the product.*

(Pl.'s Ex. D, ¶ 3(f)(1)(f) (emphasis added).) Plaintiff contends that Defendant is required to defend and indemnify Plaintiff under the exception to the vendor's endorsement exclusion which provides for coverage of bodily injury and property damage arising out of the "[d]emonstration, installation, servicing or repair operations ... performed at the vendor's premises in connection with the sale of the product." (*Id.*)

Defendant disclaims any obligation to defend or indemnify Plaintiff because De-

fendant asserts that the vendor's endorsement does not cover Plaintiff's alleged negligent assembly of the patio furniture. (Pl.'s Ex. F, ¶ 2; Ex. G.) Defendant insists that the exclusion clause in paragraph 3(f)(1)(e) demonstrates this limitation:

> The insurance afforded the vendor does not apply to ... [a]ny failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products.

(Pl.'s Ex. D, ¶ 3(f)(1)(e).) Defendant has denied any obligation to extend coverage to Plaintiff based upon the vendor's endorsement exclusion for "[a]ny failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes" in connection with the distribution or sale of the products. (*Id.*) Defendant claims that the vendor's endorsement covers only product defects and not instances of "active negligence" by the vendor. (Pl.'s Ex. F.)

Plaintiff files its Motion for Summary Judgment seeking to have this Court declare that Defendant is obligated to defend and indemnify Plaintiff for liability arising out of injuries allegedly sustained by customers utilizing the patio furniture displayed in Plaintiff's stores. Plaintiff also is seeking to have this Court declare that Defendant is obligated to reimburse Plaintiff for the costs of defending itself. Finally, Plaintiff is seeking a judgment for interest penalty provided in Michigan Complied Laws, Section 500.2006.

## Discussion

### 1. Standard for summary judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Martin v. Ohio Turnpike Commission,* 968 F.2d 606, 608 (6th Cir.1992).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party. *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir.1987). The Court is not required or permitted, however, to judge the evidence or make findings of fact. *Id.* at 1435–36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *Id.* at 1435.

A fact is "material" for purposes of summary judgment where proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984) A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Accordingly, where a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Id.; Feliciano v. City of Cleveland,* 988 F.2d 649, 654 (6th Cir.1993).

Once the moving party carries its initial burden of demonstrating that no genuine issues of material fact are in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. To create a genuine issue of material fact, the nonmoving party must present more than just

some evidence of a disputed issue. As the United States Supreme Court has stated:

> [T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted); *see Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548; *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Consequently, the nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transportation Service, Inc.*, 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd*, 929 F.2d 701, 1991 WL 49687 (6th Cir.1991). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505; *see Cox v. Kentucky Department of Transportation*, 53 F.3d 146, 150 (6th Cir.1995).

### 2. Basic principles of contract interpretation

Under Michigan law, which governs this diversity action, the rules of interpretation and construction of an insurance contract are the same rules as for any other contract. *Comerica Bank v. Lexington Insurance Co.*, 3 F.3d 939, 942 (6th Cir.1993). Policy language is to be given its ordinary meaning, unless the policy specifies a different or special meaning. *Id.; see Ford Motor Credit Co. v. Aetna Casualty and Surety Co.*, 717 F.2d 959, 961 (6th Cir. 1983).

■ If a contract term is ambiguous, then the interpretation that is most favorable to the insured must be adopted. *Comerica Bank*, 3 F.3d at 942; *Ford Motor*, 717 F.2d at 961; *Fresard v. Michigan*

*Millers Mutual Insurance Co.*, 97 Mich. App. 584, 590, 296 N.W.2d 112, 114 (1980), *aff'd*, 414 Mich. 686, 327 N.W.2d 286 (1982). An insurer who seeks to limit coverage by an exclusionary clause has the duty to express clearly the limitations of the policy and the scope of the exclusion. *Ford Motor*, 717 F.2d at 961; *see Regents of the University of Michigan v. Employees of Agency Rent–A–Car Hospital Association*, 122 F.3d 336, 339 (6th Cir.1997). Any ambiguity created by the exclusion will be strictly construed against the insurer and liberally construed in favor of the insured. *Ford Motor*, 717 F.2d at 961; *see Regents*, 122 F.3d at 339.

Whether a contract's terms are ambiguous is a question of law for the Court to determine. *GenCorp, Inc. v. American International Underwriters*, 178 F.3d 804, 818 (6th Cir.1999) (citations omitted); *Gesing v. Grand Rapids Hardware Co.*, 362 F.2d 363, 365 (6th Cir.1966). If the Court finds no ambiguity, it should proceed to interpret the contract and may do so at the summary judgment stage. *GenCorp*, 178 F.3d at 818. If the Court finds that the terms are ambiguous, however, the Court should examine relevant extrinsic evidence. *Id.* If the extrinsic evidence is contested or contradictory, then summary judgment probably is inappropriate. *Id.* at 818–19. If, however, the extrinsic evidence supports only one of the conflicting interpretations, then the Court may enter summary judgment. *Id.* at 818.

### 3. Analysis

The Court will address each of Plaintiff's four arguments separately.

### a. Whether absence of express language precludes Defendant from denying coverage

■ Plaintiff contends that because the vendor's endorsement created a reasonable expectation of coverage, Defendant's failure to express clearly within the vendor's endorsement the limitation that it now seeks to enforce is fatal to Defendant's denial of coverage. *See Fresard*, 97 Mich.

App. at 590–91, 296 N.W.2d 112. Plaintiff argues that the language of the exclusion in paragraph 3(f)(1)(e) does not appear to apply to the *assembly* of display models that Plaintiff undertakes in the usual course of business. Paragraph 3(f)(1)(e) states, in relevant part, that,

> The insurance afforded the vendor does not apply to ... [a]ny failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products.

(Pl.'s Ex. D, ¶ 3(f)(1)(e).)

Defendant disclaims any obligation to defend or indemnify Plaintiff because Defendant insists that the exclusion clause in paragraph 3(f)(1)(e) excludes Plaintiff's negligent assembly of the patio furniture. Defendant argues that Plaintiff assembled the patio furniture and then failed to inspect, adjust, or test the assembled chairs to ensure that they were assembled properly. According to Defendant, while this provision may not apply to the assembly of display models, it does apply to any failure by Plaintiff to inspect, adjust, test, or service those models once assembled.

Even if the Court assumes, for the purpose of Plaintiff's motion, that Plaintiff does not normally inspect, adjust, test, or service the furniture in question, the exclusionary clause in paragraph 3(f)(1)(e) does not express clearly that it applies to such activities as assembling floor models. Because Defendant seeks to limit Plaintiff's insurance coverage based on this exclusion, Defendant must demonstrate that this exclusionary clause clearly expresses the desired limitation. The absence of express language limiting coverage precludes Defendant from denying its obligation. *See Ford Motor,* 717 F.2d at 961; *Regents,* 122 F.3d at 339. In adherence to the basic principles of contract interpretation and construction that apply here, this Court must resolve the absence of express language of exclusion in favor of Plaintiff and in favor of coverage.

### b. Whether the vendor's endorsement provides coverage for all risks not expressly or unambiguously excluded

Second, Plaintiff contends that Defendant issued to Compex "a comprehensive commercial general liability policy ... also known as an 'all risk policy' " which means that any risk not specifically and unambiguously excluded is covered. *See Meijer, Inc. v. General Star Indemnity Co.,* 61 F.3d 903, 1995 WL 433592 *1 (6th Cir. July 21, 1995). The purpose of such a policy, according to Plaintiff, is to cover negligent acts of the insured.

Whether or not Plaintiff's contention is correct, Defendant could have included an express exclusion for claims arising out of the insured's negligence, but Defendant failed to do so. Defendant admitted that there is no specific language in the vendor's endorsement that excludes coverage for negligence on the part of Plaintiff. (Hr'g Tr. at 9.) At oral argument, Defendant argued that the parties to this contract are sophisticated and familiar with the sorts of contracts in question, (Hr'g Tr. at 10, 25), so Plaintiff's negligence impliedly was excluded from coverage. This argument cuts both ways, however, because if Defendant—as a sophisticated insurance company—had intended to exclude coverage for Plaintiff's negligence, then the vendor's endorsement could have and should have expressed that intent. An insurer who seeks to limit coverage by an exclusionary clause has the duty to express clearly the limitations of the policy and the scope of the exclusion. *Ford Motor,* 717 F.2d at 961; *Regents,* 122 F.3d at 339. Therefore, Defendant's failure to express its alleged intent should be resolved in favor of Plaintiff.

### c. Whether the language of the endorsement covering bodily injury and property damage covers the insured's negligence

Third, Plaintiff asserts that the language of the vendor's endorsement that provides

coverage for bodily injury and property damage also covers Plaintiff's negligence. The vendor's endorsement expressly insures Plaintiff "with respect to bodily injury or property damage *arising out of* [Compex's] products ... distributed or sold in the regular course of [Plaintiff's] business." (Pl.'s Ex. D, ¶ 3(f) (emphasis added).)

In response, Defendant asserts that the purpose of the vendor's endorsement was to place ultimate liability with the manufacturer, as long as the vendor is a mere "conduit" of the product. Defendant contends that Plaintiff was not a mere conduit but allegedly was part of the cause of the problem, and Plaintiff is seeking indemnification for its own alleged negligent assembly of the chairs. According to Defendant, a vendor's endorsement should not be read as providing a ·reasonable expectation of coverage for Plaintiff's own negligence in assembling the patio furniture.

■ First, the term "arising out of" is "ordinarily understood to mean 'originating· from,' 'having its origin in,' 'growing out of' or 'flowing from' or in short, 'incident to or having a connection with.'" *Assurance Company of America v. J.P. Structures, Inc.*, 132 F.3d 32, 1997 WL 764498 *5 (6th Cir. Dec.3, 1997); *see Pep Boys v. Cigna Indemnity Insurance Co. of North America*, 300 N.J.Super. 245, 692 A.2d 546 (1997).[1] Under such a broad definition, the customers' injury claims "arise out of" Plaintiff's negligence.

■ Second, Defendant wants to have it both ways here. Defendant maintains throughout that the vendor's endorsement is unambiguous, but Defendant also tries to avail itself of what is at best parol

evidence by arguing from the general purpose of a vendor's endorsement and by offering the affidavit of an insurance coverage expert on general practices in the insurance industry. (Def.'s Ex. 11.) Such expert opinion testimony is inadmissible in attempting to resolve a legal question, unless there is a need to clarify technical terms used in the contract. *See North American Specialty Insurance Co. v. Myers*, 111 F.3d 1273, 1280–81 (6th Cir. 1997). Moreover, extrinsic evidence of the vendor's endorsement's general purpose should be considered only when the terms are unclear or ambiguous. *See, e.g., Orchard Group Inc. v. Konica Medical Corp.*, 135 F.3d 421, 429 (6th Cir.1998); *American Anodco, Inc. v. Reynolds Metals Co.*, 743 F.2d 417, 422 (6th Cir.1984); *Goodwin v. Coe*, 392 Mich. 195, 209–10, 220 N.W.2d 664 (1974). If the Court were to find that the terms were ambiguous, however, then the interpretation that is most favorable to the insured must be adopted, as discussed above. *Ford Motor*, 717 F.2d at 961; *Regents*, 122 F.3d at 339. Furthermore, an insurer who seeks to limit coverage by an exclusionary clause has the duty to express clearly the limitations of the policy and the scope of the exclusion. *Ford Motor*, 717 F.2d at 961; *Regents*, 122 F.3d at 339. Therefore, absent an express limitation, the "arising out of" language of the vendor's endorsement should be construed and interpreted in favor of coverage.

### d. Whether the more specific of two competing exclusion clauses should be adopted when they conflict

Plaintiff argues that the exclusion clause on which Defendant relies to deny cover-

---

[1]. The parties argued extensively about two cases interpreting the "arising out of" language, both decided by the Appellate Division of the Superior Court of New Jersey, *Pep Boys v. Cigna Indemnity Insurance Co. of North America*, 300 N.J.Super. 245, 692 A.2d 546 (1997), and *American White Cross Laboratories, Inc. v. Continental Insurance Co.*, 202 N.J.Super. 372, 495 A.2d 152 (1985). The language of the endorsement at issue in *Pep Boys* was the same as the language at issue in

the instant case. As noted in *Pep Boys*, however, the language in the endorsement at issue in *American White Cross* "differs substantially and significantly from [the] endorsement" in *Pep Boys* and the instant case. 692 A.2d at 551. *American White Cross* is distinguishable from the instant case if only because the endorsement at issue there contained nothing equivalent to paragraph 3(f)(1)(f) at issue here.

age is trumped by a more specific exclusion clause which itself contains an exception that covers Plaintiff in this situation. Plaintiff argues that the following vendor's endorsement provision covers Plaintiff:

> The insurance afforded the vendor does not apply to … [d]emonstration, installation, servicing or repair operations, *except such operations performed at the vendor's premises in connection with the sale of the product.*

(Pl.'s Ex. D, ¶ 3(f)(1)(f) (emphasis added).) According to Plaintiff, this exception to an exclusion means that the vendor's endorsement covers the demonstration, installation, servicing, and repair operations performed at the vendor's premises in connection with the sale of the product such as assembly of the patio furniture.

■ According to Plaintiff, Michigan law requires that where a specific contract clause is at odds with a general contract clause, the more specific clause will control. *See Fresard v. Michigan Millers Mutual Insurance Co.,* 97 Mich.App. 584, 589, 296 N.W.2d 112, 114 (1980). Therefore, to the extent that exception to the exclusion in paragraph 3(f)(1)(f) is more specific than the exclusion Defendant is championing in paragraph 3(f)(1)(e), the paragraph 3(f)(1)(f) provision should prevail. Defendant insists that the exclusion clauses are not in conflict, and if the terms of the contract are clear and unambiguous, then the Court is obligated to accept the plain meaning of the words used as the agreement of the parties. *Stine v. Continental Casualty Co.,* 419 Mich. 89, 114, 349 N.W.2d 127, 138 (1984). The Court cannot create ambiguity where none exists. *Auto–Owners Insurance Co. v. Churchman,* 440 Mich. 560, 567, 489 N.W.2d 431, 434 (1992).

■ The exclusionary clauses do not appear to be in conflict or ambiguous. Paragraph 3(f)(1)(f) appears to cover the assembly of the patio furniture without ambiguity, and this Court has held above that paragraph 3(f)(1)(e) does not. Assembling chairs for demonstration appears to fall under the general description of

"such operations performed at the vendor's premises in connection with the sale of the product." If the provisions did conflict, however, the more specific provision—paragraph 3(f)(1)(f)—would prevail over the less specific paragraph 3(f)(1)(e). *See Fresard,* 97 Mich.App. at 589, 296 N.W.2d 112. As this Court has repeated many times above, an insurer who seeks to limit coverage by an exclusionary clause has the duty to express clearly the limitations of the policy and the scope of the exclusion. *Ford Motor,* 717 F.2d at 961; *Regents,* 122 F.3d at 339. Therefore, the exception to the exclusion in paragraph 3(f)(1)(f) should be construed in favor of Plaintiff and in favor of coverage.

■ Finally, in Count III of its Complaint, Plaintiff seeks interest penalties pursuant to Michigan Compiled Laws, Section 500.2006. Plaintiff is seeking summary judgment on Count III in the motion presently before the Court. (Pl.'s Mot. at 1.) Under Section 500.2006, the failure of an insurer to pay a claim on a timely basis is an unfair trade practice that gives rise to an interest penalty, "unless the claim is reasonably in dispute." M.C.L. § 500.2006(1). Whether a claim was "reasonably in dispute" is a matter for the Court to determine. *See All American Life & Casualty Co. v. Oceanic Trade Alliance Council International, Inc.,* 756 F.2d 474, 482 (6th Cir.1985). Plaintiff has not shown that there is a genuine issue as to a material fact concerning Plaintiff's claim for penalty interest. In light of the apparent conflicts, complexities, and subtleties involved in interpreting the provisions of the vendor's endorsement, as discussed above, this Court concludes that Plaintiff's claim for coverage was reasonably in dispute. Therefore, the Court will grant summary judgment in favor of Defendant on Count III of Plaintiff's Complaint.

Because the terms of the vendor's endorsement are not ambiguous, this Court will grant Plaintiff's Motion for Summary Judgment in favor of Plaintiff on Counts I and II of Plaintiff's Complaint as to liabili-

ty only; the question of damages remains before the Court. The parties should prepare to proceed to trial on the question of damages.

Conclusion

Accordingly, this Court being fully advised in the premises,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment [Docket Entry 8] is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant shall defend and indemnify Plaintiff for any liability arising from patio furniture claims and lawsuits up to the limits of the policy and vendor's endorsement at issue in this civil action.

**IT IS FURTHER ORDERED** that Defendant shall reimburse Defendant for the full amount that Plaintiff has paid on patio furniture claims and lawsuits, including costs and attorney's fees incurred in defending such matters.

**SO ORDERED.**