RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 18a0001p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

BEAU DARRELL HEIMER,

*Plaintiff-Appellee,*

*v.*

COMPANION LIFE INSURANCE COMPANY,

*Defendant-Appellant.*

No. 16-2274

---

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:15-cv-00338—Janet T. Neff, District Judge.

Argued: November 30, 2017

Decided and Filed: January 2, 2018

Before: COLE, Chief Judge; McKEAGUE and STRANCH, Circuit Judges.

---

**COUNSEL**

**ARGUED:** Kimberly J. Ruppel, DICKINSON WRIGHT PLLC, Troy, Michigan, for Appellant. Christopher P. Desmond, Detroit, Michigan, for Appellee. **ON BRIEF:** Kimberly J. Ruppel, DICKINSON WRIGHT PLLC, Troy, Michigan, for Appellant. Christopher P. Desmond, Detroit, Michigan, for Appellee.

COLE, C.J., delivered the opinion of the court in which STRANCH, J., joined, and McKEAGUE, J., joined in the result. McKEAGUE, J. (pp. 7–8), delivered a separate opinion dissenting from Part II.A of the majority opinion and concurring in the judgment.

---

**OPINION**

---

COLE, Chief Judge.  This matter is about whether a contract should mean what it says.  After Beau Darrell Heimer was injured in a motorbike accident, he filed an insurance claim with Companion Life for the bill.  Companion Life denied the claim, citing a plan exclusion that disclaimed coverage for injuries resulting from the "illegal use of alcohol."  But the district court read "illegal use of alcohol" to disclaim coverage only for the illegal consumption of alcohol, and not for Heimer's illegal post-consumption conduct of operating a motorbike while under the influence of alcohol.  The district court's reading is consistent with the ordinary meaning of "use" and best gives effect to the contract as a whole.  We affirm.

## I. BACKGROUND

Heimer was only a year over the legal drinking age on a fateful night in April 2013.  That night, he and his friends drank and, later, rode their motorbikes in a field in Michigan.  While riding their motorbikes, Heimer and one of his friends collided.  Heimer suffered extensive injuries and incurred more than $197,333.50 in medical bills.  Medical records indicate that Heimer's blood alcohol level shortly after the crash was 0.152, nearly twice the limit to legally use an off-road vehicle in Michigan.

Heimer was insured by Companion Life.  As required by his plan, he submitted a medical claim form shortly after the accident, but the plan administrator denied coverage.  The plan administrator pointed to a plan exclusion that disclaimed coverage for "[s]ervices, supplies, care or treatment of any injury or [s]ickness which occurred as a result of a Covered Person's illegal use of alcohol."  (Administrative Record, R. 34-1, Page ID 550, 605.)

After exhausting his administrative appeals, Heimer filed suit, and the case eventually found its way into federal court.  Parting with the insurance administrator, the district court held that the plan exclusion did not encompass Heimer's injuries.  It noted that there is a difference between the illegal use of alcohol—such as drinking while under 21 or drinking in defiance of a court order—and illegal post-consumption conduct, such as the illegal use of a motor vehicle.

What was illegal about Heimer's behavior was his use of a motor vehicle, not of alcohol. And if there were any doubts, the district court explained, the contract should be construed against the insurance company as the drafter.

Companion Life now appeals.

## II. ANALYSIS

We review Companion Life's plan, and the district court's reading of it, without deference. *See Hoover v. Provident Life & Accident Ins. Co.*, 290 F.3d 801, 808–09 (6th Cir. 2002). We interpret plan provisions "according to their plain meaning, in an ordinary and popular sense," giving effect to the unambiguous terms of the plan. *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 556 (6th Cir. 1998).

### A. The Ordinary Meaning of "Use of Alcohol" is the Act of Consuming Alcohol.

We agree with the district court that "use of alcohol" most naturally refers to the act of consuming alcohol, and not post-consumption conduct.

The plan does not define "use," so we give the term its ordinary meaning. In this context, "use" means "[t]he action of consuming something as food, drink, a drug, etc." Oxford English Dictionary (3d ed. 2011); *see also* Merriam Webster's Collegiate Dictionary (defining "to use" as "to consume or take (as liquor or drugs) regularly") (11th ed. 2004); American Heritage Dictionary of the English Language ("To partake of, especially as a habit: *She rarely uses alcohol.*") (5th ed. 2017). In everyday English, an "illegal use of alcohol" thus means an illegal act of consuming alcohol—such as drinking while under 21, on public streets, or in an unlicensed restaurant. *See, e.g.*, Mich. Const. Art. 4, § 40; Mich. Comp. Laws § 436.1915; Mich. Comp. Laws § 436.1913. Read this way, Heimer's conduct was not an "illegal use of alcohol": Heimer was over the legal age to drink, and Companion Life has not pointed to any law that prohibited Heimer from consuming alcohol.

Companion Life would have us read "use" to mean "under the influence" of alcohol, but we have found no definitions of "use" that are so capacious. To be sure, "use" can also be defined to mean "the act of putting something to work, or employing or applying a thing."

Oxford English Dictionary (3d ed. 2011). But "[i]n law, as in life," context matters. *Yates v. United States*, 135 S. Ct. 1074, 1082 (2015) (Ginsburg, J., plurality op.). A natural English speaker would say that one "consumes" alcohol, but no natural speaker would say that someone "employs" or "applies" alcohol. The other definitions of "use" must give way to the context-specific one. And though "use" sometimes means habitual consumption—for instance, "his drug use lasted years"—even that usage is not so broad to mean "under the influence."

Other plan language also forecloses Companion Life's reading. When the plan intended to disclaim coverage for injuries sustained while under the influence of something, it used specific language. In that vein, the plan disclaimed coverage for injuries "while under the influence of any controlled substance . . . not administered on the advice of a Physician." (Administrative Record, R. 34-1, Page ID 550.) This "difference in language demands a difference in meaning." *Gallo v. Moen Inc.*, 813 F.3d 265, 270 (6th Cir. 2016). Under the plan, "use" and "under the influence" are different.

Nor has Companion Life argued that "illegal use of alcohol" is a term of art for driving under the influence. Instead, it volunteered its belief that the "illegal use of alcohol" language would exclude coverage for injuries from misdemeanor bar fights and, remarkably, for "simply sustaining a fall while at home." (Appellant's Opening Br. 19.) Whatever the merits of that, it does not argue that "illegal use of alcohol" is a specialized term for driving under the influence.

And there is still more to support our reading: Heimer pleaded guilty to an offense that proscribed the use of a motor vehicle, not the use of alcohol. Heimer operated an off-road vehicle while intoxicated, a misdemeanor offense under Michigan law. That law provides that "[a] person shall not operate an [off-road vehicle] if, due to the consumption of intoxicating liquor . . . the person has visibly impaired his or her ability to operate the [off-road vehicle]." Mich. Comp. Laws § 324.81135(1) (repealed 2015). True, Heimer's conduct was illegal "due to the consumption of intoxicating liquor," but the illegal act proscribed by the statute is the use of a vehicle. As the statute says, "[a] person shall not operate an [off-road vehicle]." The statute does not say that a person "shall not consume alcohol," the language used by the Michigan legislature when it intended to make illegal the consumption of alcohol. *See, e.g.*, Mich. Comp. Laws § 436.1913 ("A person shall not consume alcoholic liquor . . . ."); Mich. Comp. Laws

§ 436.1915 ("Alcoholic liquor shall not be consumed . . . ."). Indeed, had Heimer's night ended with him going to bed instead of going for a drive, there would have been nothing illegal about his conduct at all, even though his use of alcohol is the same in either scenario. The only difference between this fiction and reality is Heimer's post-use conduct. And only that is illegal.

Finally, none of the hodgepodge of district court cases cited by Companion Life persuade us to adopt a different reading. As Companion Life conceded at oral argument, many of those cases considered different plan language. *E.g.*, *Tourdot v. Rockford Health Plans, Inc.*, 357 F. Supp. 2d 1100, 1103 (W.D. Wis. 2005) (excluding coverage for injuries resulting from "illegal acts"); *Sutton v. Hearth & Home Distribs., Inc. Emp. Benefit Plan*, 881 F. Supp. 210, 213 (D. Md. 1995) (excluding coverage for injuries "due to the use or misuse of alcohol"). More importantly, none of the cases analyzed the ordinary meaning of the word "use," and all instead deferred to the reading of the plan adopted by the insurance company's administrator. By giving short shrift to the ordinary meaning of "use," those cases elided the distinction between "use of alcohol" and post-use conduct.

The worst one can say about our reading is that it does not give effect to the insurance company's understandable desire not to pay for injuries sustained during a drunken ride on a motorbike. But if the insurance company wanted to exclude this type of injury, it should have used specific language to that effect, as many other insurance companies have done. *E.g.*, *Cultrona v. Nationwide Life Ins. Co.*, 748 F.3d 698, 702 (6th Cir. 2014) (discussing exclusion where the "Covered Person [is] deemed and presumed, under the law of the locale in which the Injury is sustained, to be under the influence of alcohol or intoxicating liquors." (emphasis omitted)).

**B. The Plan is Construed Against Companion Life, the Drafter.**

Were there any doubts that the plan is unambiguous, the ordinary contract principle to construe a contract against its drafter is the final nail in the coffin. When a court conducts de novo review, as here, "any ambiguities in the language of the plan [must] be construed strictly against the drafter of the plan." *Regents of Univ. of Mich. v. Emps. of Agency Rent-A-Car Hosp.*

*Ass'n*, 122 F.3d 336, 340 (6th Cir. 1997). Because our reading of the contract is at least reasonable, Heimer would still prevail even if we had concluded that the plan was ambiguous.

### III. CONCLUSION

We affirm the judgment of the district court.

---

**CONCURRING IN PART AND DISSENTING IN PART**

---

McKEAGUE, Circuit Judge, dissenting in part and concurring in the judgment.  I agree with the result we reach today, but I cannot agree with the majority's conclusion that the relevant exclusion is unambiguous.  The majority declares "context matters."  I agree.  Let's consider the context.  Beau Darrell Heimer and some friends decided to over-indulge in alcoholic beverages to work up the nerve to hurtle themselves toward each other at high speed on dirt bikes—after nightfall in a farm field—to see who might "chicken out" at the last second.  No one plays this game sober.  The alcohol they deliberately ingested emboldened them to play a reckless game of chicken, leading to predictably tragic results when neither Heimer nor his contestant "blinked" and they collided head-on.  Heimer's health insurer, Companion Life, denied coverage, invoking an "illegal use of alcohol" exclusion.  We review de novo.

The majority reasons that Heimer was not "using" alcohol when he crashed because he had completed the "act of consuming alcohol" beforehand.[1]  I disagree with the majority's holding in Part II.A that the relevant exclusion *unambiguously* supports Heimer's position.  The majority offers one valid reading.  However, other valid readings capture the unlawful "employment of [alcohol]" under these circumstances.  *Black's Law Dictionary* (10th ed. 2014).

In one sense, can we really doubt that a person who has a blood-alcohol level of over twice the legal limit continues to "use" the alcohol in his bloodstream after he ingests it?  *Cf. Aroma Wines & Equip., Inc. v. Columbian Distrib.*, 844 N.W.2d 727, 731 (Mich. Ct. App. 2013).[2]  Read this way, Heimer "used" (indeed abused) alcohol after he ingested it to play chicken in the same way one "uses" (abuses) cocaine after he inhales it to get high.

---

[1]Yet, inasmuch as Heimer's blood-alcohol was 0.152 shortly after the collision, his body was in a sense still "consuming" the alcohol in an inebriated state, as intended, at the time of collision.

[2]"Contrary to the trial court's conclusion that 'to use a wine, one would have to drink it or perhaps sell it,' we hold that the definition of 'use' encompasses a much broader meaning.  The term 'use' requires only that a person 'employ for some purpose,' and clearly, drinking or selling the wine are not the only ways that defendant could have employed plaintiff's wine to its own purposes."  *Id*. (citing *Random House Webster's College Dictionary* (1992)).

The majority cites the fact that the phrase "under the influence" appears elsewhere in the contract, but "use" can reasonably be construed to encompass *both* the discrete "act of ingesting alcohol" *and* the process of bringing oneself into a prolonged state of being "under the influence of alcohol," to embolden participation in a reckless game. *See Black's Law Dictionary* (10th ed. 2014) (defining "use" as "[t]he application *or* employment of something . . . for [a] purpose").

Moreover, several district courts have upheld broader constructions of "illegal use of alcohol" provisions under an arbitrary and capricious standard of review. *See, e.g., Johnson v. Prudential Ins. Co. of Am.*, 2012 WL 5378313, at *5 (S.D. Ohio Oct. 31, 2012) ("[T]he 'use' [of alcohol] became illegal when Chapman began to drive."); *Jones v. Channel Shipyard & Co., Inc.*, 2001 WL 1490915, at *3 (E.D. La. Nov. 20, 2001) ("Jones illegally used alcohol—not because the drinking in and of itself was illegal but, because combined with driving, it was."). These rulings substantiate the notion that a broader reading of "illegal use of alcohol" exclusions is not unreasonable and support the conclusion that the language of the exclusion, viewed in context, is not unambiguous. The majority's determination that the phrase "illegal use of alcohol" is unambiguous says more than needs to be said and may establish bad precedent unnecessarily.

Companion Life surely did not intend its policy to cover injuries arising from drunken participation in a reckless game of chicken. Reading "illegal use of alcohol" so narrowly leaves one seeing double.[3] But ultimately, in this case, the insurer must bear the consequences of its sloppy drafting. *See Regents of Univ. of Mich. v. Emps. of Agency Rent-A-Car-Hosp. Ass'n*, 122 F.3d 336, 340 (6th Cir. 1997)) (noting on de novo review that "any ambiguities in the language of the plan [must] be construed strictly against the drafter of the plan"). Thus, although I disagree with the majority's holding in Part II.A, above, I concur in the judgment.

---

[3]For example, treatment for injuries resulting from operating a motor vehicle while intoxicated, third-offense—a felony under Mich. Comp. Laws § 257.625(4) punishable by up to ten years in prison—would not trigger the exclusion; but treatment for injuries resulting from consuming alcohol as a minor, first-offense—a misdemeanor under Mich. Comp. Laws § 436.1703(1) punishable by a fine of no more than $100.00 and community service—would trigger the exclusion.