RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 06a0185p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

CITIZENS INSURANCE COMPANY OF AMERICA,

         *Plaintiff-Appellant,*

    *v.*

MIDMICHIGAN HEALTH CONNECTCARE NETWORK PLAN,

         *Defendant-Appellee.*

No. 05-1237

>

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 03-74256—Lawrence P. Zatkoff, District Judge.

Argued: January 24, 2006

Decided and Filed: June 1, 2006

Before: MOORE and McKEAGUE, Circuit Judges; POLSTER, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Robert L. Goldenbogen, GARAN LUCOW MILLER, Port Huron, Michigan, for Appellant. Craig H. Lubben, MILLER, JOHNSON, SNELL & CUMMISKEY, Kalamazoo, Michigan, for Appellee. **ON BRIEF:** Daniel S. Saylor, GARAN LUCOW MILLER, Detroit, Michigan, for Appellant. Craig H. Lubben, MILLER, JOHNSON, SNELL & CUMMISKEY, Kalamazoo, Michigan, for Appellee.

    McKEAGUE, J., delivered the opinion of the court, in which POLSTER, D. J., joined. MOORE, J. (pp. 9-10), delivered a separate dissenting opinion.

_____

## OPINION

_____

    McKEAGUE, Circuit Judge. Plaintiff-appellant, Citizens Insurance Company of America ("Citizens") appeals the district court's denial of its motion for summary judgment, and the declaration that Citizens is first in priority for the payment of medical expenses incurred as a result

_____

[*]The Honorable Dan Aaron Polster, United States District Judge for the Northern District of Ohio, sitting by designation.

1

of an automobile accident.  For the reasons that follow, the holding of the district court is reversed, and the case is remanded for proceedings consistent with this ruling.

## I. FACTUAL AND PROCEDURAL HISTORY

The facts in this case are undisputed.  On December 19, 1999, Jacqueline Bradshaw ("Bradshaw") was injured in a motor vehicle accident and required extensive medical treatment.[1] At the time of the accident, Bradshaw was covered under a Citizens excess no-fault auto policy, and MidMichigan Health ConnectCare Network Plan ("MidMichigan"), a health benefit plan offered through her employer.  MidMichigan is a self-funded employee health and welfare benefit plan, established pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*.  The plan provides health insurance benefits to the employees of MidMichigan Medical Center.  As a result of Bradshaw's injuries, Citizens alleges it paid $135,565.11 in medical expenses out of priority.  Citizens brought this action to recover payment for these expenses.

Citizens filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56, seeking a declaration that Citizens' coverage was secondary to the MidMichigan plan, and accordingly, Citizens was entitled to reimbursement for the payment of Bradshaw's claims.  The parties agree that a priority dispute arising between an ERISA plan and a no-fault policy is resolved pursuant to federal common law.  *See Auto Owners Ins. Co. v. Thorn Apple Valley, Inc.,* 31 F.3d 371 (6th Cir. 1994).  According to *Thorn Apple Valley,* when an ERISA health benefit plan and a policy of no-fault insurance have conflicting coordination of benefits clauses, the ERISA plan language prevails. *Id.*  However, the district court found that the holding of *Thorn Apple Valley* was inapplicable here, because the coordination of benefits clauses were *not* in direct conflict.  *See Citizens Insurance Company of America v. MidMichigan Health Connectcare Network Plan,* No. 03-CV-74256-LPZ (E.D. Mich., filed Jan. 3, 2005) (hereinafter slip op.).  In so finding, the court determined that MidMichigan's plan language did not expressly disavow payment of injuries otherwise covered by a policy of no-fault insurance, nor did it effectively subordinate its own coverage to Citizens.[2] *Id.* at 9-10.  Therefore, the MidMichigan ERISA plan was in full effect at the time of Bradshaw's accident.[3]  However, the court found that the language of the Citizens' excess no-fault policy did not exclude payment of benefits for Bradshaw, even though she was simultaneously covered under the MidMichigan plan.  *Id.* at 11-12.  The court declared Citizens the primary payer.  *Id.*

The parties agree that there is no conflict in the coordination of benefits clauses between the plan and the policy.  The sole issue on appeal is whether the district court erred in deciding that the no-fault policy language did not exclude payment for Bradshaw's injuries when she was covered under the MidMichigan employee health benefit plan.

---

[1]Bradshaw died April 18, 2001.

[2]During oral argument, MidMichigan mistakenly argued that the district court had not engaged in this analysis. However, in its brief on appeal, MidMichigan states:  "[a]lthough the lower court correctly held that there was no conflict between the plan language of Citizens' no-fault policy and MidMichigan's ConnectCare plan, it is important to note that if a conflict existed, MidMichigan's Plan language would control." (Appellee Br. 15).  The fact that an ERISA coordination of benefits clause would prevail if there were a conflict between the plans is irrelevant, because there is no conflict between the plan and the policy, and the only issue on appeal is whether the district court properly interpreted the Exclusions clause in the no-fault policy. (Appellee Br. 2).  Further, appellee asks this court to affirm the ruling of the district court, and the district court ruled that MidMichigan's plan did not conflict with the no-fault policy.

[3]The MidMichigan Plan amended its plan language effective January, 2001. The district court made its determination based on the plan language that was in effect at the time of the auto accident.

## II. JURISDICTION AND STANDARD OF REVIEW

Subject matter jurisdiction is proper under 29 U.S.C. §§ 1001 *et seq*, and 28 U.S.C. § 1331. Because Citizens' claim against MidMichigan, an ERISA-qualified employee benefit plan, requires a determination under federal common law, subject matter jurisdiction is appropriate under 28 U.S.C. § 1331. *See Thorn Apple Valley, Inc*., 31 F. 3d at 374.[4]

We review *de novo* a denial of summary judgment decided on purely legal grounds. *See McMullen v. Meijer, Inc.*, 355 F.3d 485, 489 (6th Cir. 2004) (district court's denial of summary judgment based on legal grounds is reviewed *de novo*). The district court's opinion was based on the interpretation of the Citizens' policy language, a purely legal question requiring *de novo* review. *See Boyer v.Douglas Components Corp.*, 986 F.2d 999, 1003 (6th Cir. 1993) (question of contract interpretation is subject to *de novo* review).

## III. ANALYSIS

The resolution of this case depends on the interpretation of the Citizens excess no-fault policy Personal Injury Protection Exclusions provision. The provision states, in relevant part:

> We do not provide Personal Injury Protection coverage for:
>
> 1.      Medical expenses for you or any 'family member':
>
>         (a)      To the extent that similar benefits are paid, payable, or required to be paid, under any individual, blanket or group accident or disability insurance, service, benefit, reimbursement or salary continuance plan. (excluding Medicare benefits provided by the federal government);

Citizens' no-fault insurance policy, Exclusions B(1)(a), JA at 107.

The district court held that the language of paragraph B(1)(a) did not exclude medical expenses covered by a medical or health benefits plan, such as the MidMichigan plan.

> Plaintiff does not actually exclude medical expenses covered by a medical or health benefits plan such as Defendant's plan. It specifically references 'accident or disability insurance.' This is in stark contrast to the language in the Limit of Liability provisions of Plaintiff's policy which limit the benefits payable for an accident involving a motorcycle when amounts are also payable under 'any individual, blanket or group accident, *hospitalization, medical or surgical* insurance or reimbursement plan . . . .' In addition Plaintiff did not cite, and the Court's review of Plaintiff's policy did not reveal, any alternative coordination of benefits provision which might be relevant to this matter.

*Citizens,* slip-op at 11.

Citizens asserts that the district court erred, and argues that the policy language excludes payment of no-fault benefits in this instance, because MidMichigan provides similar benefits for

---

[4]"On occasion, Congress explicitly directs the federal courts to develop a body of common law to fill in the interstices of a statutory scheme in order to ensure national uniformity of application. ERISA presents just such a situation, where federal common law is expected to develop and address rights and obligations arising under the Act." *Thorn Apple Valley, Inc*., 31 F.3d at 374-75 (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56 (1987); and *In re White Farm Equipment Co.*, 788 F.2d 1186, 1191 (6th Cir.1986)).

medical expenses, and is a group *benefit* plan listed in the Exclusions clause.  Further, Citizens states that "accident or disability insurance" is just one type of plan that falls within the Exclusions, and a serial listing of other types of plans are included.

In response to Citizens' claim that "accident or disability insurance" is just one in a series of plans excluded from coverage under the Citizens' policy, MidMichigan asserts two incompatible arguments.  First, MidMichigan argues that "accident and disability insurance" is the *only* type of plan excluded:

> That exclusion is clearly limited to benefits payable under an 'accident or disability' insurance plan.  Citizens argues . . . that this language 'expressly covers group benefit plans' but that argument ignores the fact that it only covers 'group **accident or disability** insurance,' not all group plans.

Appellee Br. 13 (emphasis in original).  Second, when pressed to explain the remainder of the Exclusions clause, MidMichigan argues that the phrase "accident or disability" is a qualifier for each of the terms that follow.  Under this theory, the Exclusions clause would be read as follows:

> To the extent that similar benefits are paid, payable, or required to be paid, under any individual, blanket or group accident or disability insurance, *accident or disability* service, *accident or disability* benefit, *accident or disability* reimbursement or *accident or disability* salary continuance plan (excluding Medicare benefits provided by the federal government).

Citizens' no-fault insurance policy, Exclusions B(1)(a), JA at 107 (italicized material added).

In order to decide which interpretation is correct, we must consider both the policy language and the intent underlying the provision.  *See Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 112-13 (1989); *Wulf v. Quantum Chemical Corp.*, 26 F.3d 1368, 1376 (6th Cir. 1994) ("When interpreting a contract, courts look not only at the language, but also for additional evidence that reflects the intent of the contracting parties.").  The rules of contract interpretation that have evolved under the federal common law in ERISA priority disputes mirror those applied in the Michigan courts.  *See Regents of University of Michigan v. Employees of Agency Rent-A-Car,* 122 F.3d 336, 339 (6th Cir 1997).  *Id.*  "A technical construction of a policy's language which would defeat a reasonable expectation of coverage is not favored . . . .  Accordingly, an insurer has a duty to express clearly the limitations in its policy; any ambiguity will be construed liberally in favor of the insured and strictly against the insurer " *Id.*  When interpreting ERISA plan provisions, courts have gone beyond the actual language of the plan, even if "clumsily drafted,"  to ascertain the underlying intent.  "Yet, the Court's paramount responsibility in construing plan language is to ascertain and effectuate the underlying intent."  *Travelers Ins. Co. v. Auto-Owners Ins. Co.*, 971 F. Supp. 298, 300-01 (W.D.Mich. 1997); *accord Allstate Ins. Co. v. Knape & Vogt Mfg. Co.*, 147 F. Supp 2d 804 (W.D.Mich. 2001).

### A.  Policy Language

The Exclusions clause excludes payment of benefits for medical expenses payable by "any individual, blanket or group accident or disability insurance, service, benefit, reimbursement, or salary continuance plan (excluding Medicare benefits provided by the federal government)." Citizens' no-fault insurance policy, Exclusions B(1)(a), JA at 107.  Looking at the plain language of the Exclusions clause, we find that MidMichigan's first argument that the clause is limited to "accident or disability insurance" ignores the remainder of the clause.  If the policy was intended to exclude only payment for medical benefits otherwise payable under "accident or disability

insurance," the exclusions clause would have ended at the phrase so stating. Presumably, MidMichigan takes this stance in order to track the language of the district court opinion, wherein the court noted that the clause "specifically references accident or disability insurance." *Citizens,* slip op. at 11. The district court did not however, indicate that "accident or disability insurance" plans were the *only* plans excluded.

The district court relied on the motorcycle Limit of Liability provision in order to interpret the meaning of the clause here. In so doing, the court pointed out that the policy language in the motorcycle provision specifically referred to *hospitalization, medical or surgical* insurance or reimbursement plans, while the language in this provision did not. While this is true, the district court erred when it failed to interpret the remainder of the Exclusions provision here. The Exclusions clause also excludes payment for medical expenses otherwise payable under "service, benefit, reimbursement, or salary continuance plan[s]." MidMichigan's first argument fails because the no-fault policy expressly excludes plans other than "accident or disability insurance" plans, even though the district court failed to determine the type of plans the remainder of the Exclusions clause intended to exclude.

MidMichigan's second argument contends that the phrase "accident or disability" is meant to qualify each of the terms that follow. In contrast, Citizens argues that the reminder of the clause is a serial listing of the types of plans excluded. In an attempt to unravel this linguistic knot, we begin with a grammatical analysis. According to *A Dictionary of Modern Legal Usage,* each adjective that qualifies a noun in the same way should be separated by a comma. For example, "a cautious[,] reserved person." Bryan A. Garner*, A Dictionary of Modern Legal Usage* 714 (Oxford University Press, 2d ed. 1995). The application of this rule yields the interpretation urged by Citizens. Under this interpretation, the Exclusions provision is a listing of *plans* that are qualified by the preceding adjectives. These adjectives include; accident or disability insurance, service, benefit, reimbursement, and salary continuance. This interpretation would properly exclude a *benefit* plan, as Citizens argues.

However, when one adjective is intended to qualify a noun phrase containing another *adjective*, as MidMichigan argues is the case here, no comma is used to separate the two adjectives. *Id.* In the no-fault provision, the phrase "accident or disability" precedes "insurance, service, benefit, reimbursement, or salary continuance plan" with no comma separating terms. Under this rule, "accident or disability" would be considered a qualifier for the other adjectives, all qualifying the noun "plan". Thus, the policy would exclude an accident or disability insurance plan, an accident or disability service plan, an accident or disability benefit plan, an accident or disability reimbursement plan, or an accident or disability salary continuance plan, as MidMichigan argues.

Hence, a pure grammatical analysis results in two plausible readings. "Contract language is ambiguous if it is subject to two reasonable interpretations." *Boyer v. Douglas Components Corp.,* 986 F.2d 999, 1003 (6th Cir. 1993) (citing *Smith v. ABS Indus.*, 890 F.2d 841, 846-47 n. 1 (6th Cir.1989)). Having found that the language of the no-fault provision is subject to two grammatical interpretations, we turn to "traditional methods of contract interpretation to resolve the ambiguity, including drawing inferences and presumptions and introducing extrinsic evidence." *Boyer,* 986 F.2d at 1005.

### B. Intent Underlying the Policy

Citizens claims that the no-fault policy issued to Bradshaw was "expressly identified as 'excess' for purposes of medical benefits and thus, does not apply to the extent that other available coverage exists." Br. of Appellant at 17. The record contains a "Certification of Policy Coverage" signed by Pamela Martin of Citizens, which certifies that the policy issued to Bradshaw provided

Medical Excess Personal Injury Protection. JA at 89.  Citizens claims that the Exclusions provision in the no-fault policy was "intended to effectuate Ms. Bradshaw's choice of acquiring a coordinated no-fault policy, with premiums appropriately reduced to reflect secondary medical coverage." Br. of Appellant at 22.  To bolster its position, Citizens refers to the statute that requires Michigan no-fault insurers to offer their policy holders the option of electing a reduced premium coordinated policy, when they have other health and accident coverage.  Mich. Comp. Laws § 500.3109(a) states:  "an insurer providing personal protection insurance benefits shall offer, at appropriately reduced premium rates, deductibles and exclusions reasonably related to other health and accident coverage on the insured."  Citizens states that it issued Bradshaw's reduced rate policy in compliance with this statute, evidencing its intent to coordinate benefits with Bradshaw's other available health coverage, namely MidMichigan. Further, Citizens quotes *Transamerica Ins. Group v. American Community Mutual Ins. Co.* in support of its assertion that the clause was meant to subordinate its coverage to other health insurance carriers:

> By mandating that no-fault insurers offer coordination of benefit clauses at appropriately reduced rates, the Legislature expressed a clear intent that the no-fault insurer not have primary liability under any circumstances when the insured elects to coordinate benefits.  Although a health insurance carrier that coordinates benefits may become secondary to a carrier other than a no-fault carrier, the no-fault carrier cannot under any circumstances be primary.

437 N.W. 2d 28, 30 (Mich. App. 1989) (Br. of Appellant at 22, n.3).

Citizens argues that the district court erred when it rendered a restrictive reading to its Exclusions clause, because the policy was issued as a reduced rate excess policy, in compliance with Michigan law, as interpreted by the *Transamerica* court.  Citizens states that "the district court unnecessarily required that the provision include the terms "medical" or "health" in order to reach Defendant's plan " when:

> the Exclusions clause manifestly envisions that medical benefits or 'similar benefits' will be payable by a variety of 'plan[s],' any one of which might be an individual, blanket or group plan.  Several plans are listed; and while accident or disability insurance is one, the clause also includes a service plan, a reimbursement plan, a salary continuation plan, and most notably, a benefit plan.

Br. of Appellant at 23-24.

Citizens asserts that the MidMichigan plan is encompassed by the Exclusions clause, because the MidMichigan plan is, by its own definition, a group "benefit plan." [5]

Further, Citizens argues that if the policy intended to only exclude payment of medical expenses that were otherwise payable under various "accident and disability insurance plans," and medical and health benefit plans were not intended to be excluded, there would be no reason for Citizens to include the Medicare qualifying language. Medicare is defined as a "health insurance

---

[5] MidMichigan defines itself as a "Benefit Plan" in its own plan document for purposes of coordination of benefits.  The relevant provision states: "Benefit plan. This provision will coordinate the medical benefits of a benefit plan.  The term benefit plan means this Plan or any of the following plans . . . .  MidMichigan Summary Plan Description, JA 278.

program" for the elderly and certain disabled individuals.[6] If "health insurance" plans were not intended to be encompassed by the Exclusions clause in the first instance, it would be unnecessary to exempt Medicare benefits from its reach.

In response to Citizens' assertions, MidMichigan claims that the policy fails to exclude payment for benefits otherwise payable under a "medical" or "surgical" insurance plan, unlike the motorcycle limit of liability provision in its policy. "Citizens' argument is further undermined by the fact that it demonstrated in the very same policy that it knew what language to use if it intended to exclude coverage for benefits payable under a group medical plan." Br. of Appellee at 14. MidMichigan further argues that Citizens' interpretation requires the court to redraft the Exclusions provision, omitting the accident and disability "qualifying language."

MidMichigan does not address Citizens' contention that MidMichigan is a "benefit plan" by its own definition, nor does it offer an explanation of the Medicare exception within the Exclusions provision that would support MidMichigan's interpretation of the clause. In response to Citizens' assertion that the no-fault statute underpins the issuance of the policy, MidMichigan avers that §500.3109(a) does not reach ERISA plans, and that ERISA plans with a coordination of benefits clause pre-empt §500.3109(a) .

While the Exclusions clause in the Citizens' no-fault policy is no model of clarity, we find that the intent of the clause was to exclude payment of medical expenses for a variety of "plans," including a "benefit plan." Citizens provided Bradshaw a reduced rate coordinated policy, and she elected the same, based on the availability of coverage for medical expenses from Bradshaw's MidMichigan plan. The Michigan Court of Appeals has found that the legislature intended to give no-fault insurers "unrestrained application of § 3109a to *health and accident coverage from whatever source*." *Transamerica Ins. Group*, 437 N.W. 2d at 29 (emphasis added). We find that the Citizens Exclusions provision was intended to exclude a *broad* range of medical and health coverage plans, in keeping with Citizens' intent to provide Bradshaw a coordinated reduced rate no-fault policy consistent with § 3109a.[7]

Moreover, Citizens' assertion that the Medicare exception to the Exclusions provision evinces its intent to otherwise exclude health and medical insurance benefit plans is valid. Medicare is a health insurance plan, not an accident or disability plan. Under MidMichigan's interpretation, Medicare would not be reached by the Exclusions provision if the provision were to only exclude payment of medical benefits otherwise payable by "accident or disability" plans, so there would be no reason to exempt Medicare benefits. MidMichigan has offered no other plausible explanation for the inclusion of the Medicare language.

Further, we find that MidMichigan's argument that ERISA plans are not reached by § 500.3109(a) misstates the law in this area. An ERISA plan pre-empts § 500.3109(a), however this does not necessarily mean that the ERISA plan will prevail in a priority dispute. *See Thorn Apple*

---

[6]*See* The Official U.S. Government Site for People with Medicare, www.medicare.gov/Publications/pubs/pdf/10116.pdf.

[7]The dissent claims that we wrongly consider the intent of the provision rather than the intent of the parties in our analysis. We disagree. The intent of the parties is clear. Bradshaw elected a coordinated policy and enjoyed the benefit of reduced no-fault automobile insurance premiums because she was covered under another health plan. Citizens issued the coordinated policy in order to effectuate Bradshaw's election, as required under § 500.3109(a). We interpret the provision bearing in mind the intent of the parties. "[T]he court must give effect to the intent which manifestly informs the language, despite technical shortcomings or hypothetical ambiguities in the language." *Allstate Insurance Co., v. Knape*, 147 F. Supp 2d 804, 809 (W.D. Mich. 2001).

*Valley,* 31 F.3d at 374. The *Thorn Apple Valley* court found that "when a traditional insurance policy and a qualified ERISA plan contain *conflicting coordination of benefits clauses,* the terms of the ERISA plan, including its COB clause must be given full effect." *Id.* at 374 (emphasis added). However, in instances when the ERISA plan does not expressly disavow coverage for payment of medical benefits otherwise covered under a no-fault policy, the coordination of benefits clauses of each plan are given their full effect, and the ERISA plan is not automatically deemed secondary. *See Great-West Life & Annuity Insurance Company v. Allstate Insurance Company,* 202 F.3d 897, 900 (6th Cir. 2000); *see also Dayton Hudson Dept. Store Co. v. Auto-Owners Ins. Co.*, 953 F. Supp. 177, 179-80 (W.D.Mich. 1995) ("[T]he *Thorn Apple Valley* court cautioned that preemption 'does not necessarily mean that the ERISA plan must prevail.' Rather, any conflict between COB provisions should be resolved under federal common law."). Here, the district court properly found that MidMichigan's plan did not expressly disavow coverage, and therefore the coordination of benefits clauses between the plan and the policy did not conflict. Thus, the holding of *Thorn Apple Valley* is inapplicable here.

We also agree with Citizens' assertion that MidMichigan is a "benefit plan," encompassed by the Exclusions clause. MidMichigan defines itself as a benefit plan in its coordination of benefits clause[8], and the statutory language of the Employee Retirement Income Security Act, ERISA, 29 U.S.C. § 1001 *et seq.* refers to the plans it regulates as "benefit plans." *See* 29 U.S.C. § 1001(a).

Having found that the intent underlying the Exclusions provision clearly militates in favor of Citizens interpretation, we find that Citizens properly excluded payment of medical benefits for a series of plans, including a "benefit plan." MidMichigan is such a plan. Because MidMichigan's plan was in full force at the time of Bradshaw's injury, and the plan did not expressly disavow coverage for medical benefits otherwise payable under a no-fault policy, we find that MidMichigan is first in priority for payment of Bradshaw's claims.[9]

## IV. CONCLUSION

For the aforementioned reasons, we REVERSE the district court's denial of summary judgment for plaintiff, and REMAND this case for proceedings consistent with this finding.

---

[8]*See* n. 6, *supra.*

[9]On remand, the district court will have to determine if the January 1, 2001, amendment of MidMichigan's plan affects the priority for payment of Bradshaw's claims that accrued after that date.

---

**DISSENT**

---

KAREN NELSON MOORE, Circuit Judge, dissenting.  I agree with the majority that the language of Citizens's personal-injury-protection exclusions provision is ambiguous.  However, because two rules of contract construction direct us to resolve the ambiguity against Citizens, I believe we are compelled to conclude that the Citizens plan does *not* exclude coverage on the basis of the MidMichigan plan.  Accordingly, I respectfully dissent.

The majority has highlighted the ambiguity in the personal-injury-protection exclusions provision of Citizens's excess no-fault policy.  The phrase "accident or disability" in the provision can be read to modify only "insurance," the term that immediately follows it, or it can be read to modify each of the subsequent terms:  "insurance," "service," "benefit," "reimbursement," and "salary continuance."  Joint Appendix ("J.A.") at 107 (Citizens Policy at 16).  Under the first, nondistributive reading, all individual-, blanket-, or group-benefit plans would be included within Citizens's coverage exclusions, and thus Citizens would not be required to make any payments that were payable under MidMichigan's group-benefit plan.  Under the second, distributive reading, the only type of individual, blanket, or group benefit plans that would be excluded would be *accident- or disability*-benefit plans, and Citizens could not deny personal-injury-protection coverage based on coverage by MidMichigan's health-benefit plan.  Two rules of contract interpretation instruct us to resolve this ambiguity against Citizens.

First, federal common law, the law that governs the interpretation of this contract, has adopted the longstanding rule of construction that ambiguities in contract language are resolved against the drafter, in this case, Citizens.  *Regents of the Univ. of Mich. v. Employees of Agency Rent-A-Car Hosp. Ass'n*, 122 F.3d 336, 339-40 (6th Cir. 1997); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 206 (1981).  Citizens had the opportunity to draft a provision that clearly excluded coverage where the insured was covered by a health-benefit plan.  *See* RESTATEMENT (SECOND) OF CONTRACTS § 206 cmt. a (explaining that "[w]here one party chooses the terms of a contract, he is likely to provide more carefully for the protection of his own interests than for those of the other party" and "is also more likely than the other party to have reason to know of uncertainties of meaning").  In fact, Citizens has demonstrated that it was capable of doing precisely that in its limit-of-liability provision regarding injuries sustained while operating a motorcycle, which explicitly excludes coverage where benefits are payable through a "medical or surgical insurance or reimbursement plan."  J.A. at 107 (Citizens Policy at 17).  Moreover, because Citizens had "the stronger bargaining position" and Citizens alone determined the terms of its "standardized contract[]," the rule of construction against the drafter applies with additional force here. RESTATEMENT (SECOND) OF CONTRACTS § 206 cmt. a.

Second, our prior precedent, by which we are bound, instructs that "an insurer has a duty to express clearly the limitations in its policy," and thus that "*any* ambiguity will be construed liberally in favor of the insured and strictly against the insurer."  *Regents of the Univ. of Mich.*, 122 F.3d at 339-40 (emphasis added) (internal quotation marks omitted).  Therefore, we must construe the ambiguity as to the limitations of the Citizens policy against Citizens, the insurer.

Because these rules of construction direct us to construe the ambiguity in Citizens's exclusions provision against Citizens, I believe that we must read "accident or disability" as modifying each of the terms that follow it, including "benefit."  Under this reading of the provision, the insured's coverage under MidMichigan's plan, which is a health-benefit plan, *not* an accident-

or disability-benefit plan, would not exclude coverage under the Citizens plan.[1] Because this court's precedents regarding the rules of contract interpretation dictate this understanding of the exclusions provision, it is unnecessary to look to the intent of the parties.[2] I respectfully dissent.

---

[1]Contrary to the majority's suggestion, reading the provision so that it does not reach health-benefit plans does not render the Medicare language meaningless. The inclusion of the language "excluding Medicare benefits provided by the federal government" in Citizens's exclusions provision simply means that where an accident or a disability results in benefits paid by Medicare, Citizens will reimburse Medicare for the cost of the benefits.

[2]Even if it were necessary to consider the intent of the parties, the majority errs in its approach to ascertaining the parties' intent. The majority acknowledges that our prior precedent instructs that "'[w]hen interpreting a contract,'" we "'look not only at the language, but also for additional evidence that reflects the *intent of the contracting parties*,'" Majority Opinion ("Maj. Op.") at 4 (quoting *Wulf v. Quantum Chem. Corp.*, 26 F.3d 1368, 1376 (6th Cir. 1994)) (emphasis added). The majority misconstrues this instruction, however, as one to consider "the intent underlying the *provision*," Maj. Op. at 4 (emphasis added), and "the intent of the *clause*," Maj. Op. at 7 (emphasis added), rather than the "intent of the *parties*," *Wulf*, 26 F.3d at 1376 (emphasis added). This leads the majority to focus on the intent of Citizens, the drafter of the provision, while giving short shrift to the intent of the other party to the contract, the insured, Jacqueline Bradshaw. Such a one-sided inquiry cannot produce an accurate assessment of the intent of the parties. Moreover, although the majority claims that "[t]he intent of the parties is clear," Maj. Op. at 7 n.7, the majority's view of the parties' intent is based on mere conjecture rather than the language of the contract or any evidence presented by the parties. The majority credits self-serving statements that Citizens made regarding its own intent in its brief to this court without any supporting evidence, either extrinsic or from the contract language. The basis for the majority's conclusion as to Bradshaw's intent is not evident or supported.