*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MARCUS HEADE and TERI JORDAN, as Special
Fiduciary of JASMINE REGINIA LIP HEADE, a
legally incapacitated person, and NATHANIEL
HEADE and NAOMI HEADE, Minors,

      Plaintiffs-Appellants/Cross-Appellees,

v

LIBERTY MUTUAL INSURANCE COMPANY,
doing business as LM GENERAL INSURANCE
COMPANY,

      Defendant-Appellee/Cross-Appellant,

and

MICHIGAN ASSIGNED CLAIMS PLAN,

      Defendant.

UNPUBLISHED
September 29, 2022

No. 359422
Wayne Circuit Court
LC No. 17-005480-NF

Before: GLEICHER, C.J., and MARKEY and PATEL, JJ.

PER CURIAM.

      At issue in this first-party no-fault case is the priority of no-fault, health, and disability insurance policies with coordination-of-benefits (COB) provisions. The circuit court determined that the injured parties' self-funded health insurance plan was first in line to pay medical bills. The court further concluded that any wage-loss claims paid by the no-fault insurer would be set off by amounts paid out by a disability policy, but not through Social Security Disability Insurance (SSDI) as the disability policy payments were already reduced by those amounts. We reverse and remand for further proceedings consistent with this opinion.

-1-

## I.  BACKGROUND

The members of the Heade family were injured in a serious motor vehicle accident on September 16, 2016.  During the accident, Jasmine Heade was driving a 2009 Pontiac G6, which she insured with Liberty Mutual Insurance Company.  Jasmine received a discounted rate by coordinating the no-fault benefits with her health insurance coverage.  The policy declarations page indicates that "Coordination of Medical Expenses And Work Loss Applies" to personal injury protection (PIP) benefits.  The policy describes:

> If there is any other insurance plan providing coverage for expenses or loss covered under [PIP] Coordination of Benefits or primary Benefits shall be coordinated with the coverage available under all such policies and plans so that up to, but no more than, one hundred percent (100%) of any such expenses or loss shall be recoverable under this and all such policies and plans combined.

When Jasmine first secured the Liberty Mutual policy, the Heade family was covered by health insurance through her employer.  By the time of the accident, however, the Heade family was covered by a Blue Cross/Blue Shield of Michigan (BCBSM) plan through Marcus Heade's employer, Fiat Chrysler Automobile (FCA).  That plan is self-funded under the Employee Retirement Income Security Act of 1974 (ERISA), 29 USC 1001 *et seq*., and states, in relevant part:

> Benefits payable under the Plan will be coordinated with and secondary to benefits provided or required by any group or individual automobile, homeowner's or premises insurance including medical payments, [PIP], or no-fault coverage. Coordination by the Plan shall be contingent upon the enrollee having first right of recovery from any such no-fault coverage available.

In a section entitled "Determining Priority," the FCA/BCBSM plan states:

> The program which, under the rules of this subsection has the first obligation to pay benefits is termed the "primary" program, and the coverages it provides are "primary."  The program (and the coverages it provides) is termed "secondary."
>
> a. Any other program which provides group or individual automobile, homeowner's, or premises insurance, including medical payments, [PIP], or no-fault coverage, is primary to the extent that either the enrollee's out-of-pocket expenses have been firs[t] satisfied or the coverage is unlimited.
>
> b. When the other program does not contain a COB provision, that program is always primary.
>
> c. When the other program contains a COB provision and the order of benefit determination under both programs' COB provisions establish this Plan as primary, the provisions of this program determine the Plan's liability, regardless of any payment the other program may have made.

d. When the other program contains a COB provision, the following order of benefit determination will be used.

    i.       The program covering the enrollee [as] an employee will be primary over the program covering the enrollee as a dependent.

    ii.      When the enrollee is a dependent child whose parents are not divorced or separated,

        ▪ The program covering the enrollee as a dependent of the parent whose birthday occurs earlier in the calendar year will be primary over the program covering the enrollee as a dependent of the parent whose birthday occurs later in the calendar year.

* * *

    iv.     When rules (i), and (ii), and (iii) above do not establish an order of benefit determination,

        ▪ The program which has covered the enrollee for the longer period of time will be primary. . . .

Jasmine's injuries left her completely disabled and unable to work. Jasmine received SSDI wage-loss payments. She also had a disability policy through her employer with Sun Life Assurance Company of Canada. Jasmine's wage-loss disability payments from Sun Life were reduced by the amount of SSDI benefits she received.[1] And Liberty Mutual set off both the Sun Life and SSDI receipts from its payout.

Following the accident, FCA/BCBSM paid a significant portion of the medical expenses incurred by the Heade family members. The Heade family members also filed a claim for benefits with Liberty Mutual. Equian, BCBSM's subrogation vendor, then sought reimbursement from Liberty Mutual. Liberty Mutual did not pay out on the Heades' claims or reimburse BCBSM.

The Heade family filed suit against Liberty Mutual in 2017, seeking first-party no-fault benefits. In its initial answer and affirmative defenses, Liberty Mutual asserted that it was not in the highest order of priority to pay out benefits and that the Heades' Liberty Mutual policy "has a coordination clause that must be properly billed first before [Liberty Mutual] has any exposure to pay benefits." The lawsuit took many twists and turns, including a short trip to federal court. Some issues were resolved through negotiation and settlement.

---

[1] Specifically, § IV of the Sun Life Benefit Provisions applicable to Long Term Disability Income Benefits provides that the policy payments will be adjusted to reflect SSDI payments received by the injured party.

In relation to the medical bills incurred by the members of the Heade family, Liberty Mutual sought partial summary disposition in its favor on the priority and COB issues. The Heade family challenged the summary disposition motion and sought to strike the priority and COB defenses, arguing that Liberty Mutual had not cited sufficient facts in its affirmative defenses and thereafter had not presented evidence to support these defenses. The Heade family further asserted that a no-fault policy cannot be coordinated with a self-funded ERISA healthcare plan like the FCA/BCBSM plan.

Although a Zoom hearing was scheduled and the parties' attorneys were in the virtual waiting room, the circuit court declined to hear oral argument. Thereafter, the circuit court granted Liberty Mutual's motion for partial summary disposition in a short handwritten order. That order states in full:

> Regarding the affirmative defense, paragraph 16 is sufficient to state a [COB] defense. Regarding the conflicting coordination clauses, a[n] ERISA clause does not necessarily preempt a no[-]fault clause. In *Citizens* [*Ins Co of America*] *v MidMichigan* [*Health ConnectCare Network Plan*], 449 F3[d] 688 [(CA 6, 2006),] the court held unless the ERISA plan expressly disavows coverage for medical its coordination provision does not make the no[-]fault policy primary.

> Here we do not have such a disavowal. The coordination provision of [the] ERISA plan by its terms only super[s]edes the no[-]fault policy if a certain contingency exist[s]. [The Heades] must have the first right of recovery from the no[-]fault policy. Here [the Heades] purchased a coordinated policy. In making that election [they] surrendered [their] right of first recovery.

Liberty Mutual subsequently sought summary disposition in its favor on the remaining issue—Jasmine's wage-loss claim. Liberty Mutual asserted that it was entitled to set off the wage-loss benefits Jasmine had received through SSDI and the Sun Life disability policy. It contended that after set-offs, it owed Jasmine approximately $200. Jasmine retorted that her SSDI benefits had already been offset from her Sun Life disability payments, limiting Liberty Mutual's right to adjust her benefits.

The circuit court entered its final opinion and order, determining:

> In short, the SSD[I] Benefits that [Jasmine] returned (or is required to return)[2] to Sun Life pursuant to the terms of its short- and long-term disability policy are not "provided" or "required to be provided," i.e., they are not permanently provided. It is the policy of this state and its courts to secure prompt and full payment of economic losses, including wage loss benefits, to parties who have been injured in an automobile accident. [Liberty Mutual's] entitlement to set off is only in the amount that Sun Life's actual payments to [Jasmine] exceeded the SSD[I] Benefits.

[2] [Liberty Mutual's] brief uses language of the requirement to refund to Sun Life. Obviously, if [Jasmine] does not pay Sun Life any amount of the SSD[I] benefits,

such amounts would not be "duplicative recovery" and [Liberty Mutual] would be entitled to [its] set-off.

However, the court then concluded: "The question of whether [Liberty Mutual] has any claim to return of the SSD[I] benefits amount or any other portion thereof from Sun Life is not before this Court." The court denied Liberty Mutual's motion for summary disposition and granted the Heades' summary disposition under MCR 2.116(I)(2).

## II. ANALYSIS

"We review de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). "A motion under MCR 2.116(C)(10) tests the factual support of a plaintiff's claim" and should be granted when after reviewing "the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party," there remains "no genuine issue regarding any material fact" that could be sent to trial "and the moving party is entitled to judgment as a matter of law." *Zaher v Miotke*, 300 Mich App 132, 139; 832 NW2d 266 (2013) (quotation marks and citations omitted). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id*. at 139-140 (quotation marks and citation omitted). "The trial court appropriately grants summary disposition to the opposing party under MCR 2.116(I)(2) when it appears to the court that the opposing party, rather than the moving party, is entitled to judgment as a matter of law." *BC Tile & Marble Co, Inc v Multi Bldg Co, Inc*, 288 Mich App 576, 590; 794 NW2d 76 (2010).

"The proper interpretation of a contract is a question of law, which this Court reviews de novo." *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 47; 664 NW2d 776 (2003). "If the contractual language is unambiguous, courts must interpret and enforce the contract as written, because an unambiguous contract reflects the parties' intent as a matter of law." *Cadillac Rubber & Plastics, Inc v Tubular* Metal Sys, LLC, 331 Mich App 416, 422; 952 NW2d 576 (2020) (quotation marks and citation omitted).

## A. VIABILITY OF DEFENSES

The Heade family challenges the circuit court's determination that Liberty Mutual adequately alleged and supported its COB and priority defenses. Assuming for the sake of this appeal that COB and priority are affirmative defenses, Liberty Mutual's statement of those defenses was adequate.

Under MCR 2.111(F)(3), affirmative defenses must be raised in the responsive pleading, unless they previously have been raised in a motion for summary disposition before the filing of a responsive pleading, MCR 2.111(F)(2)(a). The failure to raise an affirmative defense as required by the court rule constitutes a waiver of that affirmative defense. [*Stanke v State Farm Mut Auto Ins Co*, 200 Mich App 307, 312; 503 NW2d 758 (1993).]

Liberty Mutual clearly included the challenged defenses in its affirmative defenses. Although the statements of defenses did not go into great detail, they were adequate to preserve

the defenses. See *id.* at 318 ("[A]n answer must be sufficiently specific so that a plaintiff will be able to adequately prepare his case, just as the complaint must be sufficiently specific so that the defendant may adequately prepare his defense. Just as the plaintiff must plead something beyond a general 'the defendant injured me,' the defendant must plead something more specific than 'I deny I'm liable.' "). Liberty Mutual also adequately supported these defenses. All that was required to analyze the COB issue and determine priority was the language of the various policies. These policies were placed before the circuit court. Nothing more was required.

## B. PRIORITY/COB

Fortunately, our review of the substance of the legal issue before us is de novo as the circuit court's order contains little for our consideration. "Under Michigan law, where no-fault coverage and health coverage are coordinated, the health insurer is primarily liable for plaintiff's medical expenses." *American Med Security, Inc v Allstate Ins Co*, 235 Mich App 301, 304; 597 NW2d 244 (1999), citing *Federal Kemper Ins Co, Inc v Health Ins Admin, Inc*, 424 Mich 537; 383 NW2d 590 (1986).[2] Under federal preemption principles, however, self-funded ERISA health plans are treated much more deferentially. As described in *Auto Club Ins Ass'n v Frederick & Herrud, Inc (After Remand)*, 443 Mich 358, 389-390; 505 NW2d 820 (1993):

> [A]n unambiguous COB clause in an ERISA health and welfare benefit plan must be given its plain meaning despite the existence of a similar clause in a no-fault policy because any conflict created by the requirements of MCL 500.3109a and this Court's interpretation of the statute would have the direct effect of dictating the terms of the ERISA plans. [Citation omitted.]

This Court has further explained:

> In [*Auto Club Ins Ass'n*, 443 Mich at 388-389], and its companion case, the plans at issue were self-funded plans created pursuant to the ERISA, and the Court carved an exception to the rule of law set out in *Federal Kemper*. It held that the unambiguous [COB] clause found in the ERISA plans must be given their plain meaning despite the clause in the no-fault policy. [*American Med Security, Inc*, 235 Mich App at 304.]

Accordingly, if a self-funded ERISA plan has an unambiguous COB clause, then the no-fault policy will be primary.

The FCA/BCBSM plan is a self-funded ERISA plan with a COB provision making the no-fault insurer primary, while Liberty Mutual is a no-fault insurer whose COB provision makes a health insurer primary. As the two COB provisions conflict, the Liberty Mutual plan is primary.

---

[2] *Federal Kemper* was overruled in part by *Auto Club Ins Ass'n v Frederick & Herrud, Inc (After Remand)*, 443 Mich 358, 389-390; 505 NW2d 820 (1993).

The circuit court cited *Citizens Ins Co of America v MidMichigan Health ConnectCare Network Plan*, 449 F3d 688 (CA 6, 2006), in determining that the FCA/BCBSM plan was primary. In *MidMichigan Health*, 449 F3d at 696, the federal Sixth Circuit Court of Appeals reasoned:

> [W]hen a traditional insurance policy and a qualified ERISA plan contain conflicting [COB] clauses, the terms of the ERISA plan, including its COB clause must be given full effect. However, in instances when the ERISA plan does not expressly disavow coverage for payment of medical benefits otherwise covered under a no-fault policy, the [COB] clauses of each plan are given their full effect, and the ERISA plan is not automatically deemed secondary. [Cleaned up.]

Here, the plain language of the FCA/BCBSM self-funded ERISA plan states that it is secondary to any no-fault plan. It expressly disavows coverage for payment of medical expenses otherwise covered by a no-fault policy. The circuit court failed to identify any language negating the clear disavowal in the FCA/BCBSM plan. Liberty Mutual was not entitled to summary disposition on the COB and priority issues and we therefore reverse the circuit court's judgment in this regard.

## C. DISABILITY OFFSET

In its cross-appeal, Liberty Mutual challenges the circuit court's determination that it could offset the Sun Life disability policy payments to Jasmine, but not the SSDI payments from the no-fault policy's wage-loss obligation.

MCL 500.3109(1) states, "Benefits provided or required to be provided under the laws of any state or the federal government shall be subtracted from the [PIP] benefits otherwise payable for the injury under this chapter." The Michigan Supreme Court has held that this provision permits no-fault providers "to deduct social security disability benefits from work loss benefits." *Mich Ed Employees Mut Ins Co v Morris*, 460 Mich 180, 185; 596 NW2d 142 (1999); *Profit v Citizens Ins Co of America*, 444 Mich 281, 283; 506 NW2d 514 (1993). MCL 500.3109a(1) further permits no-fault insurers to set-off their wage-loss payments by "other health and accident coverage." This includes wage-loss benefits paid out by disability insurance policies or plans. See *Jarrad v Integon Nat'l Ins Co*, 472 Mich 207, 218; 696 NW2d 621 (2005); *Rettig v Hastings Mut Ins Co*, 196 Mich App 329, 333; 492 NW2d 526 (1992).

Liberty Mutual was clearly permitted to set off the wage-loss benefits paid to Jasmine by the amounts Jasmine received from Sun Life and SSDI. The question is what effect Sun Life's previous setoff of the SSDI benefits has on Liberty Mutual. The COB provision of the Liberty Mutual policy renders the Sun Life policy primary to pay wage-loss benefits. As the Sun Life policy is *not* a self-funded ERISA plan, it cannot claim priority over Liberty Mutual despite the no-fault policy's COB provision. Accordingly, Liberty Mutual, not Sun Life, was entitled to off set its wage-loss benefit obligation by the SSDI payments. We reverse the circuit court in this regard as well.[3]

---

[3] Jasmine Heade's recourse is to seek reimbursement from Sun Life for the benefits it withheld.

We reverse and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Jane E. Markey
/s/ Sima G. Patel